**MARY M., as Parent/Next Friend for Diane M., a Minor (Names are pseudonyms), Plaintiff,**

**v.**

**NORTH LAWRENCE COMMUNITY SCHOOL CORPORATION, Defendant.**

No. NA 94–143 C D/H.

United States District Court, S.D. Indiana, New Albany Division.

Jan. 6, 1997.

Michael K. Sutherlin, Indianapolis, IN, for Plaintiff.

Darla S. Brown, Jennifer Bauer, Kelley Belcher & Brown, P.C., Bloomington, IN, for Defendant.

## ENTRY

BARKER, Chief Judge.

In this case plaintiff alleges that her thirteen-year-old daughter was sexually harassed and/or abused by one Andrew Fields, a school cafeteria worker employed by defendant, in violation of Title IX of the Educational Amendment Act of 1972, 20 U.S.C. § 1681. A jury trial was conducted on October 21–28, 1996, resulting in a verdict in favor of plaintiff and against defendant on the issue of liability, but awarding zero compensatory damages and zero punitive damages. Now before the court are plaintiff's Motions for a New Trial and to Question and Interview Jurors on the Record, or in the Alternative, to Personally Interview the Jurors, and plaintiff's bill of costs. For the reasons discussed below, plaintiff's motions for a new trial and to interview jurors are **denied**, and plaintiff's bill of costs is **allowed in part** and **disallowed in part**.

### I. Motion for New Trial

Plaintiff argues that she is entitled to a new trial because, in her estimation, the jury's verdict is a "compromise verdict," and is inconsistent with the evidence and the Court's instructions to the jury. The test in the Seventh Circuit for reviewing a jury verdict is "whether there is a reasonable basis in the record for the verdict." *Knox v. State of Ind.*, 93 F.3d 1327, 1332 (7th Cir.1996); *Gorlikowski v. Tolbert*, 52 F.3d 1439, 1446 (7th Cir.1995).

## A. Compromise Verdict

■ "A compromise verdict results when jurors resolve their inability to make a determination with any certainty or unanimity on the issue of liability by finding inadequate damages." *Mekdeci v. Merrell Nat'l. Labs.*, 711 F.2d 1510, 1513 (11th Cir.1983). However, an award of low or zero damages, standing alone, does not necessarily indicate a compromise. *Id.* A verdict might be deemed a compromise verdict where the record clearly demonstrates such factors as lengthy deliberations, strongly contested issues of liability, evidence of jury confusion, or that neither party urged acceptance of the verdict. *See Bosco v. Serhant*, 1986 WL 11990, at *2 (N.D.Ill. Oct. 21, 1986). · Plaintiff's burden is a heavy one, because the rule is "that the record itself viewed in its entirety must clearly demonstrate the compromise character of the verdict otherwise it is not error for the trial judge to refuse to set the verdict aside on this ground." *Maher v. Isthmian Steamship Co.*, 253 F.2d 414, 419 (2nd Cir.1958), *quoted in Luria Bros. & Co. v. Pielet Bros. Scrap Iron*, 600 F.2d 103, 115 (7th Cir.1979).

■ In this case, plaintiff points to the following as indications of a compromise verdict: the length of the jury's deliberations; the fact that the jury sent a question to the judge; the fact that, after deliberating for seven hours, the jury reported that it was deadlocked with five jurors on one side and three on the other, and yet two hours later, reached its verdict. Plaintiff cites *Mekdeci* and *Lucas v. American Mfg. Co.*, 630 F.2d 291, 292–94 (5th Cir.1980) as examples of cases where the verdict was found to be a compromise. However, both of those cases are easily distinguishable from the facts of this case. In *Lucas*, because of an approaching hurricane, the trial court admonished the jury either to quickly finish its deliberations, or to return on a later date. The jury found the defendant liable, but awarded damages less than the minimum amount stipulated by the defendant. The Fifth Circuit held that a new trial was necessary because of the risk that the trial court's coercion produced the inadequate award of damages. *Lucas*, 630 F.2d at 292–94. In *Mekdeci*, the court's finding that the verdict was a compromise was based on the following facts: the jury deliberated for four days; the jury sent several communications to the judge indicating uncertainty on the central issue of causation; on the fourth day of deliberations, the jury attempted to qualify its verdict; and the jury announced a deadlock soon after the judge denied its request to qualify its verdict. *Mekdeci*, 711 F.2d at 1515.

In our case, the jury deliberated for a total of approximately nine hours, not an unusually long time and a significantly shorter period of time than in *Mekdeci*. The first question sent by the jury to the judge in this case merely asked for clarification of the relevant time period in which to evaluate Fields' conduct—hardly evidence of confusion on a central issue. While the jury thereafter did indicate, after seven hours of deliberations, that they were at a stalemate, they did not attempt to qualify or otherwise explain their verdict. Furthermore, there is no evidence in this case that the jury was coerced into reaching a verdict, as was the *Lucas* jury. In fact, after the jury informed the court that it was deadlocked, the judge conferred with counsel for both parties, and without objection from either side, then instructed the jury to continue its efforts to reach a unanimous verdict, referring the jury to the court's instruction number 23.[1] The Seventh

---

1. Instruction number 23 reads as follows:

Your verdict must represent the considered judgment of each juror. In order to return a verdict, it is necessary that each juror agree. Your verdict must be unanimous.

You should make every reasonable effort to reach a verdict. In doing so, you should consult with one another, express your own views, and listen to the opinions of your fellow jurors. Discuss your differences with an open mind. Do not hesitate to re-examine your own views and change your opinion if you come to believe it is wrong. But you should not surrender your honest beliefs about the weight or effect of evidence solely because of the opinions of your fellow jurors or for the purpose of returning a unanimous verdict.

Each of you should give fair and equal consideration to all the evidence and deliberate with the goal of reaching an agreement which is consistent with the individual judgment of each juror.

Circuit approved the giving of this instruction to deadlocked juries in *U.S. v. Silvern,* 484 F.2d 879, 883 (7th Cir.1973) (requiring that any supplemental instruction given to juries in a deadlock situation must be in this form), and has since held that a *Silvern* charge such as this is appropriate where a jury, after deliberating for seven hours, indicates to the judge that it believed that further deliberation would be "fruitless." *U.S. v. Kwiat,* 817 F.2d 440, 446 (7th Cir.1987), *cert. denied,* 484 U.S. 924, 108 S.Ct. 284, 98 L.Ed.2d 245 (1987); *see also U.S. v. Beverly,* 913 F.2d 337, 351 (7th Cir.1990) (mistrial not compelled by the fact that the jury thought it was deadlocked after approximately twelve hours of deliberations in a lengthy and complicated criminal trial), *cert. denied,* 498 U.S. 1052, 111 S.Ct. 766, 112 L.Ed.2d 786 (1991). More recently, the Seventh Circuit upheld a trial court's denial of a motion for a new trial where the jury deliberated for ten hours before announcing a deadlock, and the judge instructed them to make another effort to arrive at a verdict. *U.S. v. Coffman,* 94 F.3d 330, 335 (7th Cir.1996).[2]

Finally, plaintiff bases her contention that the verdict was a compromise verdict in part on her assumption that the jury's early five-three vote was in her favor, and that "three men were unwilling to set aside their bias and prejudice and held out and refused to find any liability unless there was an agreement not to award any damages." (Plaintiff's Memorandum in Support of Motion for New Trial, at 1).[3] We find this assumption to be wholly unsupported and inappropriate, and therefore unacceptable as evidence of a compromise verdict. *See Thezan v. Maritime Overseas Corp.,* 708 F.2d 175, 180 (5th Cir.1983) ("It is a cardinal principal of jurisprudence that we are not allowed to speculate as to the thought processes of the jury.") *cert. denied,* 464 U.S. 1050, 104 S.Ct. 729, 79 L.Ed.2d 189 (1984); *U.S. v. Russo,* 796 F.2d 1443, 1450 (11th Cir.1986) ("We will not look behind the verdicts for evidence of jury confusion.").

## B. Inconsistent with the evidence and with jury instructions

Plaintiff also challenges the verdict on the grounds that it is unsupported by the evidence, and that it is inconsistent with the court's jury instructions. Once again, we will only grant a new trial if we can conclude that there is no reasonable basis in the record for the verdict. *Knox,* 93 F.3d at 1332; *Gorlikowski,* 52 F.3d at 1446. Specifically, plaintiff claims that a verdict of liability without any damages is inconsistent with the evidence and with jury instruction numbers 15 and 16. In Instruction Number 15, the Court instructed the jury that:

> If you find that the Plaintiff has proved all of the essential elements of her claim against the Defendant, then the Plaintiff is entitled to recover compensatory damages against the Defendant for *any* damages which she *may have* personally suffered *as a result of* Defendant's actions. Therefore, if you decide for Plaintiff on the issue of liability, you must then fix the amount of damages that will reasonably and fairly compensate Plaintiff for *any* harm which the wrongful conduct of the Defendant *proximately caused* or was a *substantial factor* in bringing about. . . .

*Court's Instruction No. 15* (emphasis added). In Instruction Number 16, the Court instructed the jury that plaintiff was not required to prove damages with mathematical

---

Remember that you are impartial judges of the facts. Your sole interest is to seek the truth from the evidence in the case.

**2.** In *Coffman,* the Seventh Circuit held that the district court committed harmless error by instructing the jury to continue its efforts to reach a verdict without first consulting with the parties and the lawyers. In contrast, in the instant case this Court did consult with counsel for both parties before instructing the jury to continue its efforts.

**3.** We are at a loss to explain or even understand plaintiff's basis for assuming that the five-three vote was in her favor, with three men voting against her, especially considering that the jury consisted of five men and three women. While it would be highly speculative, and inappropriate, to assume a gender split of any sort, it would seem more logical that a straight gender split would result in the five votes being those of the five male jurors and the three votes, those of the three female jurors. But, because it *is* patently inappropriate, we will not join plaintiff in any such conjecturing.

certainty, but that plaintiff was "only required to furnish evidence consisting of sufficient facts and circumstances to permit an intelligible and probable estimate thereof." *Court's Instruction No. 16.*

██ Plaintiff is correct in arguing that, because the jury found that she had proved all of the elements required for a finding of liability, she was entitled to recover the amount of damages which would compensate for *any* harm *proximately caused* by defendant's wrongful conduct. This does not, however, mean that with a finding of liability automatically comes an award of some amount of damages. Plaintiff must furnish proof that she actually suffered damages, and that those damages were proximately caused by defendant's wrongful conduct. Plaintiff's reliance on *Thomas v. Stalter*, 20 F.3d 298 (7th Cir.1994), is misplaced. In that case, the court directed a new trial where a finding of zero damages was inconsistent with a jury instruction which "specifically required the jury to find damages before it could find liability." *Thomas*, 20 F.3d at 303. Unlike the instruction in *Thomas*, our instruction numbers 15 and 16 did not specifically require a finding of damages in order to support a finding of liability. To the contrary, our instructions merely provided that if the jury found liability, they should award *any* damages personally suffered by the plaintiff that were proximately caused by the defendant's wrongful conduct. The language of this instruction allows a jury both to find liability and to award zero damages if, for instance, it finds that there was insufficient evidence of damages, or that plaintiff did not personally suffer or experience the damages proved, or that any damages proved were not proximately caused by the defendant's wrongful conduct.

██ Plaintiff's claim that she "furnished ample evidence of sufficient facts . . . to permit the jury to determine appropriate damages" does not address the question that we must answer in reviewing the jury verdict: whether there is a reasonable basis in the record for the jury's finding of zero damages. Plaintiff did present evidence that she suffered emotional harm because she felt that the welfare department and police depart-

ment disbelieved her and because, the year after she was abused, other high school students talked about her. Nevertheless, in light of the evidence presented at trial, a jury could (and perhaps did) reasonably conclude that these harms were not proximately caused by the defendant's wrongful conduct. Plaintiff also presented expert testimony that she suffered and continues to suffer from emotional harm as a result of being sexually abused; however, evidence was also introduced indicating that the majority of that harm was likely the result of sexual abuse she suffered as a young child at the hands of her then stepfather. Therefore, we believe that there was ample basis in the record for the jury to conclude that plaintiff did not provide sufficient evidence that her damages were proximately caused by defendant's conduct. *See Luria Bros.*, 600 F.2d at 115. ("The jury is entitled to disregard the damages asked for if they do not agree with the computations or if other evidence is introduced from which jurors could draw their own conclusions."). Furthermore, the evidence supported a finding that because Andrew Fields had made restitution for any out-of-pocket medical or psychiatric expenses incurred by plaintiff as a result of defendant's conduct, that she therefore had no compensable out-of-pocket expenses.

For the reasons discussed above, we find that the jury's verdict in favor of plaintiff on the issue of liability, awarding zero damages, was not a compromise verdict, and that it is entirely consistent with the court's instructions to the jury and the evidence presented at trial. Therefore, to the extent plaintiff's motion for a new trial is based on her belief that the jury's verdict was a compromise verdict and/or inconsistent with the evidence and the jury instructions, the motion is **denied.**

## C. *Welcomeness*

In her Supplemental Memorandum in Support of Plaintiff's Request for New Trial, plaintiff advances an additional argument in support of her request for a new trial. Plaintiff attached to her Supplemental Memorandum a copy of the Office for Civil Rights' ("OCR") notice, published in the Federal

Register on October 4, 1996, regarding "Sexual Harassment Guidance: Harassment of Students by School Employees; Notice." Specifically, plaintiff points to the following language in the OCR's notice regarding the element of welcomeness as it pertains to Title IX claims based on allegations of sexual harassment of elementary school students by school employees:

> If elementary students are involved, welcomeness will not be an issue: OCR will never view sexual conduct between an adult school employee and an elementary school student as consensual.

*OCR Notice*, at 52173. After quoting this language, plaintiff simply states that "it seems that it would be judicially economical and fair to order a new trial immediately and to properly instruct the jury on the issue which would preclude welcomeness as an element of defense...." (Pltf.'s Suppl.Memo., at 2).[4]

■ We resolved the legal issue of welcomeness in this case in a previous entry, signed on October 18, 1996, and entered on the docket October 21, 1996, and the above-quoted language does not change our analysis. First, we note that a notice of proposed rulemaking from the OCR does not have the binding force of law. Second, even if we were inclined to follow the directive of the OCR, the above quoted language would not apply to this case, since this case does not involve an elementary school student. Third, the conclusion we reached in our prior entry—that unwelcomeness was not established as a matter of law in this case due to plaintiff's status as a minor, but that her age would be a factor for the jury to consider in determining whether Andrew Field's advances were unwelcomed by plaintiff—was amply supported by legal authority cited in that entry, and is also consistent with the OCR notice's discussion of welcomeness in the context of claims brought by secondary school students. *OCR Notice*, at 52173. Fi-

nally, and perhaps most telling, the jury verdict was in favor of plaintiff with respect to liability, and therefore, the jury necessarily found *for* plaintiff on the issue of welcomeness. It defies logic for a party to request a new trial in order to revisit an issue on which she has already won. For the reasons discussed above, to the extent plaintiff's motion for a new trial is premised upon our previous rulings on the issue of welcomeness, as well as the OCR Notice discussion of that issue, the motion is **denied.**

### II. Motion to Interview Jurors

■ Plaintiff's motion to interview jurors is premised on her assertion that the jury's verdict in this case was a compromise verdict, and on her belief that "it is necessary and essential to question the jurors as to their motivation in order to verify the contention that the verdict was reached as a compromise." (Pltf.'s "Motion to Question ... Jurors ...," at ¶ 14). "Absent competent evidence to the contrary, a court has no reason to assume that an inconsistent or compromise verdict is not unanimous, and therefore has no justification for inquiring into the logic behind the jury's verdict." *U.S. v. Gipson,* 553 F.2d 453, 457 (5th Cir. 1977) (noting that "a juror's testimony relating to the mental process by which he reached his verdict is not competent evidence for purposes of impeaching a jury's verdict."); *U.S. v. Russo,* 796 F.2d at 1450; *U.S. v. Jaskiewicz* 433 F.2d 415, 421 (3rd Cir. 1970) (a court cannot go behind a jury verdict that is supported by the record), *cert. denied* 400 U.S. 1021, 91 S.Ct. 582, 27 L.Ed.2d 632 (1971).

■ We have already determined that the record does not support a finding that the jury's verdict was a compromise verdict, and that the verdict is not inconsistent with the evidence or the jury instructions given at trial. Therefore, there is no justification for going behind the jury's verdict. Accordingly,

---

4. Plaintiff also states in her Supplemental Memorandum that a new trial "would serve to inhibit any misogynist tendencies by jurors who are unabashingly inclined to apply a double standard towards female students irrespective of their age." (Pltf.'s Supp.Memo., at 2). This statement inappropriately and groundlessly attributes im-

proper motives to the jury, and altogether ignores the fact that the jury found in *favor* of plaintiff on the issue of liability. Furthermore, the excessive rhetorical tone suggests that plaintiff's counsel has lost all professional detachment in advancing his arguments and contentions.

plaintiff's motion to question and interview jurors is denied.

### III. Bill of Costs

Plaintiff requests reimbursement for costs as a prevailing party and, to that end, has submitted a bill of costs. The Federal Rules of Civil Procedure instruct the Court that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Fed.R.Civ.Proc. Rule 54(d) ("Rule 54(d)"). Defendant argues that, because plaintiff was awarded no damages, her victory was "purely technical" and she is therefore not a prevailing party entitled to costs under Rule 54(d). In the alternative, defendant has raised several specific objections to certain items in plaintiff's bill of costs.

### A. Prevailing Party

Essentially, defendant argues that, because plaintiff's victory on liability came with an award of zero damages, she is not a prevailing party for the purposes of an award of costs under Rule 54(d).[5]

The Seventh Circuit has stated that a "prevailing party" for the purposes of a Rule 54(d) award of costs is "the party who prevails as to the substantial part of the litigation." *Testa v. Village of Mundelein, Ill.,* 89 F.3d 443, 447 (7th Cir.1996), *citing First Commodity Traders, Inc. v. Heinold Commodities, Inc.,* 766 F.2d 1007, 1015 (7th Cir.1985). The instant case involved a single Title IX claim, on which plaintiff prevailed. While it is true that plaintiff was awarded zero damages, judgment on liability was entirely for plaintiff and against defendant. Courts have consistently held that a prevailing party for the purposes of Rule 54(d) is the party "in whose favor judgment is rendered ... regardless of the amount of damages awarded." *All West Pet Supply ·Co. v. Hill's Pet Prods. Div., Colgate–Palmolive Co.,* 153 F.R.D. 667, 669 (D.Kan.1994); *see also American Ins. Co. v. El Paso Pipe and Supply Co.,* 978 F.2d 1185, 1192 (10th Cir. 1992) ("The determination of who is the prevailing or successful party is based upon success upon the merits, not upon damages.") (*quoting* 20 C.J.S. Costs § 11 (1990)); *Ganey v. Edwards,* 759 F.2d 337, 339 (4th Cir.1985) (in a prisoner action charging denial of access to law library, plaintiff was prevailing party where it was found he was denied due process, even though he was awarded no damages); *Western Elec. Co. v. William Sales Co.,* 236 F.Supp. 73, 77 (M.D.N.C.1964) (Plaintiff awarded only nominal damages was still a prevailing party for purposes of award of costs); *Bowman v. West Disinfecting Co.,* 25 F.R.D. 280, 282 (E.D.N.Y.1960) (where verdict was for plaintiff on issue of liability and for defendant on issue of damages, plaintiff was prevailing party). Accordingly, we find that plaintiff is the prevailing party, and is therefore entitled to an award of costs under Rule 54(d).

In 28 U.S.C. § 1920 ("§ 1920") Congress has set forth the costs to be awarded to a prevailing party under Rule 54(d):

A judge or clerk of any court of the United States may tax as costs the following;

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

---

5. Neither case cited by defendant supports defendant's position. *Weaver v. Toombs,* 948 F.2d 1004, 1009 (6th Cir.1991), involved an award of costs against unsuccessful *in forma pauperis* plaintiffs. The Sixth Circuit held that, where an action is dismissed on appeal, the defendant is the prevailing party, and that costs can be constitutionally assessed against an indigent plaintiff. *Cartwright v. Stamper,* 7 F.3d 106 (7th Cir.1993), involved an award of attorneys' fees under 42 U.S.C. § 1988, which is based upon different standards than is an award of costs under Rule 54(d). 7 F.3d at 109–10 (concluding that plaintiff's award of nominal damages was a purely technical victory and that no attorneys' fees should be awarded). *See Dickinson v. Indiana State Election Bd.,* 817 F.Supp. 737 (S.D.Ind., 1992); *Goodwin v. M.C.I. Communications Corp.,* No. CIV. A. 94–D–1869, 1996 WL 162275 (D.Colo., Apr. 5, 1996) ("this distinction—'costs' under section 1920 versus 'attorney's fees'—is not academic. In order to be reimbursed for its expenses, a prevailing party must properly distinguish its section 1920 costs from it's attorney's fees.").

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under section 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

A bill of costs shall be filed in the case and, upon allowance, included in the judgment or decree.

■■■ Whether to award specific costs is within the discretion of the court, but it is clear that if the cost is listed in § 1920, a presumption exists that it will be taxed; conversely, if the cost is not listed in § 1920, the court should exercise its discretion sparingly in taxing such a cost. *Farmer v. Arabian American Oil Co.*, 379 U.S. 227, 235, 85 S.Ct. 411, 416, 13 L.Ed.2d 248 (1964); *see also, McGovern Constr. Corp. v. Bouchard*, No. 94 C 3679, 1996 WL 131782, at *1 (N.D.Ill. March 20, 1996); *Somat Corp. v. Somat Corp.*, No. NO 90 C–4943, 1993 WL 75155, at *1 (N.D.Ill. March 15, 1993).

### B. Plaintiff's Bill of Costs

Plaintiff seeks $14,689.86 in costs related to this case. Her bill of costs lists the following:

| | | | |
|---|---|---|---|
| 1. | "Fees of the Clerk" | $ | 71.00 |
| 2. | "Fees for service of summons and complaint" | $ | 48.15 |
| 3. | "Fees of the court reporter ..." | $ | 30.00 |
| 4. | "Fees for witnesses" | $ | 630.00 |
| 5. | "Exemplification & copies of papers" | $ | 428.60 |
| 6. | "Docket fees under 28 U.S.C. § 1923" | $ | 120.00 |
| 7. | "Costs incident to taking depositions" | $ | 5,120.40 |
| 8. | "Legal Research" | $ | 848.55 |
| 9. | "Expert Fees" | $ | 7,346.00 |
| 10. | "Certified Mail Service for service of subpoenas" | $ | 47.16 |
| | TOTAL = | | $14,689.86 |

### 1. "Fees of the Clerk"

■■■ Initially, we note that the $71 which plaintiff lists as "fees of the clerk" consists of moneys paid to the Clerk on November 1, 1996 for the following charges: $70.50 for 141 "copies run for Pltf's counsel" at $0.50 per copy, and $0.50 for a black magic marker. (See receipt, in appendix to bill of costs). "Fees of the Clerk" are provided for in 28 U.S.C. § 1914, which includes, *inter alia,* "reproducing any record or paper, 50 cents per page." 28 U.S.C. § 1914(4). Thus, while the $70.50 charge is apparently a statutory "fee of the clerk," we will treat it as "exemplification and copies of papers," so that we can determine if these copying costs, along with the other "exemplification and copies" costs requested by plaintiff, meet the applicable standard for taxation of copying costs. (*See* discussion of "exemplification and copies of papers" at section 3, *infra* ). The $0.50 charge for a black magic marker merely reflects a purchase of office supplies, no different than if plaintiff's counsel had purchased the black magic marker at Wal–Mart. Therefore, we will **exclude** the $0.50 charge for the black magic marker, because office supply purchases are not included in "fees of the clerk" under § 1914, and are otherwise non-recoverable under § 1920. *See Bridges v. Eastman Kodak Co.*, No. 91 CIV. 7985 (RLC), 1996 WL 47304, at *15 (S.D.N.Y. Feb. 6, 1996) ("supplies" are "more properly attributable to overhead expenses" and will not be allowed as costs) *aff'd*, 102 F.3d 56 (2nd Cir. Dec. 10, 1996); *In re Media Vision Technology Securities Litigation,* 913 F.Supp. 1362, 1371 (N.D.Cal.1996) (costs of office supplies "should be absorbed by counsel as part of the cost incurred in operating a legal practice," and are not taxable as costs under § 1920); *Hertz Corp. v. Caulfield,* 796 F.Supp. 225, 230 (E.D.La.1992) (disallowing charges for chalk, erasers and other office supplies which "should be included in attorney's hourly rate as overhead").

### 2. Defendant's Objections

Defendant raises a number of specific objections to items in plaintiff's bill of costs, which we will now address in turn.

### a. Postage expenses for service of subpoenas and complaint.

Plaintiff requests reimbursement for the costs of serving fifteen complaints, by certified mail, at a cost of $3.21 each. Plaintiff mailed two copies each of the complaint to Andrew Fields, James Peck and Jimmy R. Pounds, and a single copy of the complaint to Dr. Deborah Craton, Richard Tallman, Jim

Pittman, Eva Smith, Rodney Fish, Gene McCracken, C. Dale Robinson, the North Lawrence Community School Corporation and the North Lawrence Community School Board.[6] (See photocopies of Certified Mail Receipts, in appendix to bill of costs).

Defendant objects to plaintiff's request for these costs, contending that plaintiff need only have served three complaints: one on Andrew Fields, one on the North Lawrence Community School Corp., and one on the North Lawrence Community School Board. Defendant maintains that, accordingly, plaintiff is only entitled to therefore $9.63, or the cost of service for three complaints at $3.21 each. Before addressing this question, however, we must decide whether service of the complaints by certified mail is a taxable cost under § 1920.

▮ Postage costs are generally not compensable under § 1920. *Downes v. Volkswagen of America, Inc.*, 41 F.3d 1132, 1144 (7th Cir.1994) (postage expenses are part of reasonable attorney's fee under § 1988, as distinct from statutory costs under § 1920); *El–Fadl v. Central Bank of Jordan*, 163 F.R.D. 389, 390 (D.D.C.1995) ("The overwhelming weight of authority have declined to award costs for courier services, postage, telephone or fax charges") (citing cases). Costs of service of process are, however, taxable under § 1920(1), which provides for "fees of the clerk and marshal." *See* 28 U.S.C. § 1921(a)(1)(A) and (B) (providing that the United States marshals "shall routinely collect, and a court may tax as costs, fees for" service of complaints and subpoenas or summons). Traditionally, service of process was carried out by a marshal, and recovery of service of process costs was limited to the marshal's fee. *See Collins v. Gorman*, 96 F.3d 1057, 1059 (7th Cir.1996). However, in *Collins*, the Seventh Circuit approved of taxation of costs of service of process, as described in § 1921(a), not to exceed the Marshall's fee, regardless of who actually effects service. *Collins*, 96 F.3d at 1060. *Collins*

interpreted § 1920(1) as permitting an award of costs "*measured by* the marshal's fees, whether or not the prevailing party *used* the marshal." *Collins*, 96 F.3d at 1060 (emphasis in original). Although *Collins* involved a private process-server, rather than service by mail, we believe that the principle applied in *Collins* applies here as well, so that an award of costs for service of process by mail is permissible, in an amount not to exceed the marshal's fee. While we do not have before us a schedule of fees indicating what fee the marshal's service would charge for service of process, we are confident that it would be at least $3.21 per service. For these reasons, and also because defendant did not object to taxation of the costs of service of process by certified mail in general, we conclude that costs for service of process by certified mail, at $3.21 each, are in general taxable items under § 1920(1).

▮ We must still address defendant's objection to service of multiple copies of the complaint on Andrew Fields, James Peck and Jimmy R. Pounds, and service on all other individual defendants. Defendant contends that because this Court ruled that plaintiff could only sue individual administrators and school board members in their official capacities, plaintiff need only have served three complaints: one on Andrew Fields, one on the North Lawrence Community School Corporation, and on the North Lawrence Community School Board. Defendant's objection appears to rest on a faulty premise, for individual defendants Craton, Smith, Pittman, Tallman, McCraken, Fish, and Robinson were initially sued only in their official capacities. Nonetheless, defendant's objection has merit insofar as it challenges service of the complaint on individual defendants sued solely in their official capacity, and service of two copies of the complaint on parties sued in both their individual and official capacities. A seasoned civil rights lawyer such as plaintiff's counsel should know that an official

**6.** Andrew Fields was sued "individually" and "as an employee of the North Lawrence Community School Corporation." James Peck and Jimmy Pounds were sued in both their individual capacities and their official capacities as Superintendent and Principal, respectively. Carol Powell was sued in her individual capacity as school counselor for Bedford Junior High School, and all other individual defendants were sued solely in their official capacities as members of the North Lawrence Community School Board.

capacity suit is tantamount to a suit against the organization to which the individual defendant belongs. In other words, in an official capacity suit, the real party in interest is the organization, here the school board and the school corporation, rather than the individual. *Hernandez v. O'Malley*, 98 F.3d 293, 295 (7th Cir.1996), *citing Leatherman v. Tarrant County*, 507 U.S. 163, 166, 113 S.Ct. 1160, 1162, 122 L.Ed.2d 517 (1993). Service on the official capacity defendant is therefore unnecessary to give effective service. Because defendant should not be required to pay for plaintiff counsel's abundance of caution, we **uphold** defendant's objection to the extent defendant objects to service on individual school board members sued only in their official capacities, and to service of two complaints each on Andrew Fields, James Peck and Jimmy Pounds. Accordingly, we **exclude** $32.10, the cost of service of ten complaints, at $3.21 each, from plaintiff's bill of costs.

Defendant also objects to plaintiff's request for $47.16 in postage expenses for serving eighteen subpoenas for trial, at a cost of $2.62 per subpoena. Defendant does not state its reason for this objection, other than to state conclusively that this expense is not compensable. The only ground this Court can attribute for this objection is that postage expenses are generally not recoverable under § 1920. However, as discussed above, the Seventh Circuit held in *Collins* that the costs of service of process, including service of subpoenas upon witnesses, are compensable regardless of how process was served, so long as the cost does not exceed the fee that would be charged by the marshal. *Collins*, 96 F.3d at 1060; 28 U.S.C. § 1921(a)(1)(B) (listing service of a subpoena for a witness as a fee of the marshal which may be taxed as a cost). Therefore, defendant's objection is **overruled.**

**b.** *Fee for a copy of the tape of Andrew Fields' sentencing*

██ Plaintiff requests reimbursement of the $30 she paid to the Auditor of Lawrence County for a copy of the tape of Andrew Fields' sentencing hearing. Defendant objects that this cost is not compensable because the tape was not offered into evidence at trial. Section 1920 provides for taxation of "fees of the court reporter for all or any part of the stenographic transcript *necessarily obtained for use in the case.*" (emphasis added). Plaintiff did attempt to introduce the tape of Fields' sentencing hearing into evidence, but we ruled that the tape was inadmissible because it, as well as any discussion of the effect that the sentencing hearing had on plaintiff, was irrelevant. Because the tape was found to be irrelevant, we now find that it was not "necessarily obtained for use in the case." Accordingly, defendant's objection is **upheld,** and the $30 cost of the tape of Andrew Fields' sentencing hearing is **excluded** from plaintiff's bill of costs.

**c.** *Witness Fees for witnesses not called to testify at trial*

Plaintiff requests reimbursement in the amount of $630, for the witness fees of 18 witnesses, at a cost of $35 per witness. Defendant objects to reimbursement of the witness fees for nine of these witnesses, each of whom defendant claims were not actually called to testify at trial, namely: James Peck, Donna Mikels, Delbert Schulenburg, Karen Goodwine, Eva Smith, "Mrs. Cook", Rodney Fish, Donna Pierce, and Jim Pittman.

██ Delbert Schulenburg and Karen Goodwine were called to testify, but by the defendant rather than by the plaintiff. A witness fee paid to a witness who is not called because he or she was on the opposing party's witness list is taxable. *Independence Tube Corp. v. Copperweld Corp.*, 543 F.Supp. 706, 720 (N.D.Ill.1982). Plaintiff does not identify "Mrs. Cook," but we presume that he is referring to Mary M., mother of the plaintiff Diane M., since Mary M., in a previous marriage, was known as Mrs. Cook. Mrs. Cook, or Mary M., did in fact testify at trial. Furthermore, she was a nominal party, suing as next friend of her daughter, the real plaintiff. It has been held that nominal parties, specifically witnesses who bring suit as next friend of the real plaintiff, are entitled to witness fees, and that these fees are taxable as costs. *See Barber v. Ruth*, 7 F.3d 636 (7th Cir.1993) (taxing cost of witness fees for estate beneficiaries who attended trial,

not to manage the litigation, but simply to testify); *The Petroleum No. 5,* 41 F.2d 268 (S.D.Tex.1930) (witness who brings suit as next friend for real plaintiff). Accordingly, we find that the witness fees paid to Delbert Schulenberg, Karen Goodwine, and Mrs. Cook are taxable as costs.

The other six witnesses—James Peck, Donna Mikels, Eva Smith, Rodney Fish, Donna Pierce, and Jim Pittman—were not called to testify at trial. The witness fees of witnesses who did not actually testify might still be taxable if the plaintiff makes some showing of good faith, for example that the witnesses were not called because the necessity for the testimony could not be measured in advance, *Copperweld,* 543 F.Supp. at 722; that the witnesses were not called because of a good faith determination that their testimony would have been repetitious and cumulative, *United States v. Lynd,* 334 F.2d 13, 16 (5th Cir.1964); or that the witnesses were not called because their testimony was made unnecessary because of concessions and admissions made by the opposing party. *Mueller v. Powell,* 115 F.Supp. 744, 745 (W.D.Mo.1953). Plaintiff has made no attempt to show that the witnesses not called to testify at trial were subpoenaed in good faith, or that there was a good faith reason for not calling them to testify. Therefore, we uphold defendant's objection with regard to the witness fees for the above-named six witnesses who did not actually testify at trial. Accordingly, plaintiff's recovery of costs for witness fees is reduced by $210 (6 × $35), leaving a total recovery for witness fees of $420.

### d. *Printing and shipping costs of Patricia H. v. Berkeley Unified School District opinion*

[21] As part of her request for copying expenses, plaintiff requests reimbursement for $31 paid to "The Print & Copy Factory" in San Francisco for printing ($10) and shipping ($21) of "one copy set of specified docu-

ments re: *Patricia H. v. Berkeley Unified School District . . . .*" (*See* receipt, in appendix to plaintiff's bill of costs).[7] Defendant does not object to the $10 printing fee, but contends that the $21 shipping cost is not recoverable. Because shipping fees and postage are generally not compensable under § 1920, we **uphold** defendant's objection, and exclude the $21 shipping charge, leaving a total recovery of $10. *See Downes,* 41 F.3d at 1144; *El–Fadl,* 163 F.R.D. at 390; *Apostal v. City of Crystal Lake, Ill. State Police,* 165 F.R.D. 508, 511 (N.D.Ill.1996) (delivery charges not recoverable as costs under § 1920).

### e. *Deposition of Richard Tallman*

Plaintiff requests $5,120.40 for costs incident to taking of depositions, of which $1,111.25 is related to the deposition of Richard Tallman. ($861.25 for reporting and transcribing Tallman deposition taken on January 16, 1995, $30 for one ASCII disk of the January 16 deposition, and $220 for one copy of volume II of Richard Tallman deposition, taken on May 23, 1995.)[8]

In determining whether the costs incident to the taking of a deposition are taxable, the relevant question is "whether the particular deposition was reasonably necessary to the case, not whether it was actually employed in court." *Endress + Hauser, Inc. v. Hawk Measurement Sys. Pty. Ltd.,* 922 F.Supp. 158, 161 (S.D.Ind.1996); *quoting Soler v. McHenry,* 771 F.Supp. 252, 255 (N.D.Ill.1991), *aff'd sub nom Soler v. Waite,* 989 F.2d 251 (1993).

Defendant objects to taxation of this cost, arguing that while the Tallman deposition was the longest of any witness, his testimony at trial was among the shortest and least important. Defendant contends that plaintiff deposed Tallman for the purpose of discovering information about other incidents unrelated to this case, specifically allegations

---

7. A receipt for this expense was included in plaintiff's appendix to her bill of costs, but Plaintiff does not indicate in which bill of costs category this expense is included. Therefore, we will examine this challenged cost separately.

8. Defendant calculated the costs of Tallman's depositions, including the ASCII disk, to be $1,296.30, but the documents submitted by plaintiff in support of her bill of costs do not support this figure.

of sexual improprieties by one Jerry Thompson and one Jan Buker, information which was later ruled inadmissible by this Court. Defendant contends that it should not have to pay for what amounted to a "fishing expedition." Because plaintiff has not provided any explanation to verify that the Tallman deposition was reasonably necessary to the case, we **uphold** defendant's objection, and **exclude** $1,111.25 from plaintiff's bill of costs.

### f. Computer–Assisted Research

 Plaintiff requests reimbursement for $848.55 in "legal research." The documentation submitted by plaintiff reveals that this cost was entirely for on-line computer research conducted on Westlaw. It is well established that the costs of computer research "are attorney's fees and may not be recovered as costs". *Haroco, Inc. v. American Nat. Bank and Trust Co. Of Chicago,* 38 F.3d 1429, 1440 (7th Cir.1994); *see also McIlveen v. Stone Container Corp.,* 910 F.2d 1581, 1584 (7th Cir.1990) (computerized research expenses "are more akin to awards under attorneys fees provisions than under costs"); *Duckworth v. Whisenant,* 97 F.3d 1393, 1399 (11th Cir.1996) ("costs such as general copying, computerized legal research, postage, courthouse parking fees and expert witness fees ... are clearly nonrecoverable"); *Migis v. Pearle Vision, Inc.,* 944 F.Supp. 508, 518 (N.D.Tex.1996) (Westlaw charges, delivery fees and postage are "more akin to overhead costs which cannot be recovered under § 1920"). Plaintiff has submitted only a bill of costs, not a petition for attorney's fees. Therefore, because costs associated with computer-assisted research are a component of attorney's fees and not costs, we **uphold** defendant's objection, and **exclude** $848.55 from plaintiff's bill of costs.

### g. Expert Fees

Plaintiff requests reimbursement for $7,346.00 in "expert fees." Defendant objects on the grounds that while the witness fees for Dr. Martha McCarthy may be recoverable, the cost of obtaining her opinions

($3,500) is not; and that the cost ($400) of Dr. Lawlor's diagnostic exam of the plaintiff is not permitted under § 1920.

 In fact, expert witness fees are *not* recoverable under § 1920, because, like computerized research and postage, expert witness fees are taxable only as part of an attorney's fee award. *Whisenant,* 97 F.3d at 1399; *Migis,* 944 F.Supp. at 517–18; *Downes,* 41 F.3d 1132; *United Steelworkers of America v. Phelps Dodge Corp.,* 896 F.2d 403, 407 (9th Cir.1990) ("any request for expert witness fees should have been incorporated into plaintiff's Petition for Attorney's Fees," not into request for costs under § 1920). Therefore, we find that no part of plaintiff's expert witness fee is compensable as a cost under § 1920, and we **exclude** $7,346.00 from plaintiff's bill of costs.

### 3. Exemplification and Copying of Papers

 Finally, although defendant has not objected to plaintiff's claimed copying costs, we cannot grant these costs on the basis of the documentation provided by plaintiff. "Whether copies are recoverable as costs depends on the use of the copies." *Endress + Hauser,* 922 F.Supp. at 160, *quoting Arachnid, Inc. v. Valley Recreation Products,* 143 F.R.D. 192, 193 (N.D.Ill.1992). Before we grant an award of costs for copying, we must inquire whether the copies were "necessarily obtained for use in the case." § 1920(2). The burden is on the party seeking such costs to "offer some proof of necessity." *Migis,* 944 F.Supp. at 518, *citing Holmes v. Cessna Aircraft Co.,* 11 F.3d 63, 64 (5th Cir.1994).

 Plaintiff requests a total of $428.60 for "exemplification and copying of papers," plus $70.50 for copying charges paid to the Clerk of Court (*See* Section B(1), *supra*). The only documentation of these costs offered by plaintiff consists of the receipt from the Clerk of Court for $70.50 for 141 copies at 50 cents per copy, and a receipt from defense counsel for $397.60, for 1,988 copies at 20 cents per copy.[9] Plaintiff has given the

---

9. Plaintiff apparently arrived at the $428.60 figure by combining the $397.60 copying charge and the $31 charge for printing and shipping

documents related to the opinion in *Patricia H.* (*See* discussion at Section 2(d), *supra*). Because we have already determined that the $10 charge

**834**

court no idea as to what papers were copied or why they were necessary. Plaintiff has therefore failed to satisfy her burden to offer some proof of the necessity of the copying costs for which she seeks reimbursement. Accordingly, the $468.10 ($497.60 + $70.50) requested for unspecified copying costs is **excluded.**

### IV. CONCLUSION

For the reasons discussed above, the Court finds as follows:

A) Because the record does not support a conclusion that the jury verdict was either a compromise verdict or inconsistent with the evidence or jury instructions, plaintiff's Motion for a New Trial and Motion to Question and Interview Jurors are both **denied.**

B) Plaintiff's bill of costs is **allowed in part** and **disallowed in part,** as follows:

1. The following items of cost are not recoverable and are therefore **excluded:**

| | | | |
|---|---|---:|---|
| a. | $ | 0.50 | purchase of one black magic marker; |
| b. | $ | 32.10 | service of ten complaints by certified mail; |
| c. | $ | 30.00 | tape of Andrew Fields' sentencing; |
| d. | $ | 210.00 | witness fees for six witnesses who did not testify at trial (6 × $35); |
| e. | $ | 21.00 | shipping charge for documents re: Patricia H.; |
| f. | $ | 1,111.25 | costs of Tallman deposition; |
| g. | $ | 848.55 | computer-assisted research; |
| h. | $ | 7,346.00 | expert fees; |
| i. | $ | 468.10 | unspecified copying costs |
| | **$10,067.50** | | **TOTAL costs excluded.** |

2. The remaining costs listed in the bill of costs, totaling **$4,622.36, are allowed.**

for printing documents related to *Patricia H.* is compensable, but that the $21 charge for shipping those documents is not, we do not include discussion of that printing cost here.