**Clifton THOMAS, Plaintiff–Appellant,**

v.

**Willis STALTER and Robert Heath, Defendants–Appellees.**

**No. 92–1715.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 20, 1994.

Decided March 30, 1994.

Paul R. Garcia (argued), Pattishall, McAuliffe, Newbury, Hilliard & Geraldson, Chicago, IL, for plaintiff-appellant.

Susan Frederick Rhodes, Asst. Atty. Gen. (argued), Office of the Atty. Gen., Chicago, IL, for defendant-appellee.

Before CUDAHY and RIPPLE, Circuit Judges, and WILLIAMS, District Judge.[*]

RIPPLE, Circuit Judge.

This appeal concerns the alleged battery upon Clifton Thomas, an inmate at the Pontiac Correctional Center, by prison guard Robert Heath. Mr. Thomas brought suit under 42 U.S.C. § 1983. Mr. Thomas claimed that his Eighth Amendment right to be free from cruel and unusual punishment was violated when Officer Heath knocked loose his four bottom front teeth. The jury returned a verdict finding that a constitutional violation had occurred[1] but awarded no damages to Mr. Thomas. For the reasons that follow, we reverse the decision of the district court to grant Officer Heath's motion for judgment notwithstanding the verdict. We affirm its conditional decision to grant Officer Heath a new trial. That trial shall address the issues of both liability and damages.

## I

## BACKGROUND

Mr. Thomas was committed to the custody of the Pontiac Correctional Center in 1985. Upon his arrival, Mr. Thomas was given a dental examination which revealed that he had severe periodontal disease. The dentist recommended that Mr. Thomas have all of his teeth removed. However, Mr. Thomas elected to keep his teeth as long as possible. The dentist scheduled Mr. Thomas to return to the clinic for a cleaning every three months. From his arrival in early 1985 until December 1987, Mr. Thomas lost no teeth. At trial, the dentist estimated that Mr. Thomas' teeth would last from one to five years from the time of his arrival in 1985.

While at Pontiac, Mr. Thomas came under investigation for the October 1987 stabbing of another inmate. The State sought a court order compelling Mr. Thomas to give a blood sample to aid in the investigation. Mr. Thomas' attorney objected to the request, but the court issued an order requiring Mr. Thomas to submit to a blood test. Mr. Thomas testified that he was never advised of the outcome of his attorney's objection. On December 8, 1987, four or five correctional officers approached Mr. Thomas in the prison gymnasium where he was working out with weights. Officer Brian Boeson told Mr. Thomas that they had a court order requiring Mr. Thomas to give a blood sample. They told Mr. Thomas that the order was at the hospital. Mr. Thomas went voluntarily to the hospital; again he was told that they had a court order for him to submit to a blood test. The parties dispute whether Mr. Thomas was ever shown a copy of the order at this time. Mr. Thomas asked for permission to speak with his attorney, but this request was denied.

Several officers took Mr. Thomas to the emergency room. They got Mr. Thomas onto a gurney; the parties dispute whether the officers slammed Mr. Thomas down onto the gurney. The officers attempted to hold Mr. Thomas down so that the lab technician could draw blood from Mr. Thomas' right arm. Ultimately, ten correctional officers were involved in restraining Mr. Thomas as he continued to resist the efforts to take the blood sample. Among these ten officers, Robert Heath was trying to hold Mr. Thomas' head. Mr. Thomas testified that Heath hit him in the mouth. Officer Heath denied the charge. The lab technician drew a sample of Mr. Thomas' blood, after which several officers took Mr. Thomas to segregation for disobeying an order.

Mr. Thomas testified that, before December 8, 1987, he could eat various hard foods such as carrots and radishes. He also testified that, after the alleged assault, his teeth were "real loose." On December 9, the dentist removed Mr. Thomas' bottom front teeth.

The jury returned a verdict in favor of Mr. Thomas on the issue of liability but awarded no damages. Mr. Thomas moved for a new trial on the issue of damages, or, in the

---

[*] The Honorable Ann Claire Williams, of the United States District Court for the Northern District of Illinois, is sitting by designation.

1. The jury found the other remaining defendant, Correctional Officer Willis Stalter, not liable for any constitutional violation. Mr. Thomas does not raise any issues with respect to this aspect of the jury's verdict.

alternative, for amendment of the judgment. Heath renewed an earlier motion for a directed verdict; he also moved for judgment notwithstanding the verdict or, alternatively, for a new trial. The district court denied Mr. Thomas' motion for a new trial or for amendment of the judgment. The court granted Officer Heath's motion for judgment notwithstanding the verdict and conditionally granted his motion for a new trial. Mr. Thomas now appeals.

## II

## ANALYSIS

Mr. Thomas challenges the granting of Heath's motion for judgment notwithstanding the verdict. Mr. Thomas also challenges the denial of his motion for a new trial on damages and the conditional granting of Officer Heath's motion for a new trial.

### A. *Judgment Notwithstanding the Verdict* [2]

The district court granted Heath's motion for judgment notwithstanding the verdict. The court acknowledged that the jury found that Heath hit Mr. Thomas, but the court concluded that, as a matter of law, Heath did not use constitutionally excessive force.

■ Our review of the grant of a motion for judgment notwithstanding the verdict is de novo. *Henderson v. DeRobertis,* 940 F.2d 1055, 1057 (7th Cir.1991), *cert. denied,* — U.S. —, 112 S.Ct. 1578, 118 L.Ed.2d 220 (1992). In conducting our review, we must view all the facts in the light most favorable to the party against whom the verdict was directed. *Cygnar v. City of Chicago,* 865 F.2d 827, 834 (7th Cir.1989). A motion for judgment notwithstanding the verdict can be granted only when "'reasonable people, viewing the facts most favorably to the plaintiff and disregarding conflicting unfavorable testimony, could not conclude that the plaintiff has made out a prima facie case.'" *Henderson,* 940 F.2d at 1057 (quoting *Rakovich v. Wade,* 850 F.2d 1180, 1188 (7th Cir.)

(en banc), *cert. denied,* 488 U.S. 968, 109 S.Ct. 497, 102 L.Ed.2d 534 (1988)).

■ Under the controlling precedent of the Supreme Court, the test for determining whether a prisoner has suffered cruel and unusual punishment has two components, one objective and one subjective. The objective component focuses on whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious. *Hudson v. McMillian,* — U.S. —, —, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992). The subjective component involves an inquiry into whether the officials acted with a sufficiently culpable state of mind. *Id.* — U.S. at —, 112 S.Ct. at 999. However, in the excessive force context, these two inquiries, as a practical matter, collapse into a single inquiry because "[w]hen prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency," which, as we have indicated, measure the objective component, "are always violated." *Id.* — U.S. at —, 112 S.Ct. at 1000. Thus, the Supreme Court has held:

> [W]henever prison officials stand accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, the core judicial inquiry is that set out in *Whitley [v. Albers,* 475 U.S. 312, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986) ]: whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm.

*Id.* — U.S. at —, 112 S.Ct. at 999.

■ We now apply these procedural and substantive standards to the case before us. This task requires that we examine in some detail the relevant facts concerning the struggle at the hospital. Several guards forced Mr. Thomas onto a gurney in the emergency room. Those officers, who were joined by six others, managed to pin Mr. Thomas down. They were holding his arms, legs, and head; one was even on top of his chest. Mr. Thomas struggled in resistance,

---

**2.** Effective December 1, 1991, Rule 50 of the Federal Rules of Civil Procedure was amended by replacing motions for directed verdict and judgment notwithstanding the verdict with a single motion for "judgment as a matter of law."

The change in terminology did not change existing standards. Because in this case the relevant post-trial motions were made prior to the effective date of the amendment, we employ the old terminology, as do the parties.

and told them to stop, but he was unable to move. During the struggle, and while Mr. Thomas was immobilized, Mr. Thomas told Officer Heath to "get [his] hands off [Mr. Thomas'] face." Officer Heath, with a clenched fist, "drew back and came down and hit [Mr. Thomas] in the mouth." Officer Heath then said, "Shut up."

Immediately after the incident, Mr. Thomas complained that he was "hurting all over." The incident also aggravated his existing dental condition. As a result, his teeth were already a "little bit" loose. Despite this looseness, Mr. Thomas could eat hard foods and could bite through a carrot without difficulty. He specifically testified that he could bite with his bottom front teeth. After Heath punched him in the mouth, however, Mr. Thomas' teeth were "real loose." The next day, Mr. Thomas was taken to the hospital where his four bottom front teeth were extracted.

Given this evidence in the record, the district court erred in granting Heath's motion for judgment notwithstanding the verdict. At a minimum, reasonable members of the jury were entitled to conclude that Mr. Thomas made out a prima facie case. He was required to do no more. *Henderson*, 940 F.2d at 1057. Viewing the evidence in the light most favorable to Mr. Thomas, Officer Heath hit Mr. Thomas in the mouth with a clenched fist while Mr. Thomas was held immobilized by at least nine other people. A punch in the face to subdue Mr. Thomas was not necessary to carry out the court order. The apparent lack of reason for the blow, the fact that Heath used a clenched fist, and the fact that Heath then said "shut up" can be interpreted reasonably as establishing that Heath's action was not a "good-faith effort to maintain or restore discipline," but rather was done "maliciously and sadistically to cause harm." *Hudson*, — U.S. at —, 112 S.Ct. at 999.

The district court reached the opposite result, but in doing so, it failed to construe the evidence in Mr. Thomas' favor. For example, the court referred to Mr. Thomas'

dentist's testimony that Mr. Thomas' teeth were "extremely loose," [3] even though Mr. Thomas testified that they were a "little bit" loose. The court stated that "Thomas did not testify that he experienced any pain or suffering as a result of being struck in the mouth." However, Mr. Thomas did testify that, after the incident, he "hurt all over."

The district court found support for its conclusion—that Heath did not use excessive force—in *Sheffey v. Greer*, 391 F.Supp. 1044 (E.D.Ill.1975). *Sheffey* is a poor guide for two reasons. First, in that case, the inmate-plaintiff admitted to suffering only "superficial facial injuries." *Id.* at 1046. The record in this case, taken in the light most favorable to Mr. Thomas, does not support such a characterization. Second, there has been a significant clarification of the law in this area. Under *Hudson*, the basic inquiry is whether the official applied force maliciously and sadistically to cause harm. *Hudson*, also makes clear that, even when significant injury is not evident, conduct that meets the above-described standard violates the Eighth Amendment, as long as it does not involve merely *de minimis* force. *See* — U.S. at —, 112 S.Ct. at 1000 (concluding that injuries involving bruises, swelling, loosened teeth, and a cracked dental plate could form the basis of a constitutional violation). We therefore must conclude that the district court erred in granting Heath's motion for judgment notwithstanding the verdict.

### B. *The Motions for a New Trial*

Mr. Thomas and Officer Heath each filed a motion for a new trial. Officer Heath requested a new trial; he did not specifically ask that it be limited to the issue of liability. Mr. Thomas requested that a new trial be limited to the issue of damages. The district court denied Mr. Thomas' motion but conditionally granted Officer Heath's motion.

In granting Officer Heath's motion, the court stated:

If the appellate court hereafter vacates or reverses this court's final judgment, a new

---

**3.** Actually, the dentist never described Mr. Thomas' teeth as "extremely" loose; he said they were

"very" loose.

trial will be granted to Heath on grounds that the verdict is contrary to the weight of the evidence and contains inconsistencies as discussed in this order. Mem. Op. at 7. Given our decision in Part II.A, *supra*, this conditional aspect of the district court's order will become operative on remand unless we order otherwise. Fed. R.Civ.P. 50(c).

■ As one of the reasons for granting Officer Heath a new trial, the district court referred to "inconsistencies as discussed in this order." Our examination of the entire opinion of the district court makes it clear that the court was referring to that part of its order where it stated:

> The jury must have found as a fact that Heath struck Thomas during the struggle to obtain the blood sample. But the jury's further finding of zero damages is inconsistent with its additional finding of unnecessary and excessive force. If Heath punched Thomas and that punch was delivered not in good faith to maintain order but maliciously with the intent to cause pain, then the jury should have awarded damages. Thomas lost four teeth and even if his advanced periodontal disease made him particularly vulnerable to injury,

nonetheless the punch would have been a proximate cause of the loss of the teeth. Mem.Op. at 3. We agree that the jury's finding of liability is in irreconcilable conflict with its award of zero damages. One of the court's instructions specifically required the jury to find damages before it could find liability.[4] Given this instruction, the jury's finding of liability implies that it also found that Heath proximately caused injury to Mr. Thomas. Nevertheless, the jury awarded Mr. Thomas no money damages. "When the jury's verdict is in contravention of the court's instructions, an appellate court will reverse for legal error." *Rosario v. Livaditis*, 963 F.2d 1013, 1021 (7th Cir.1992), *cert. denied*, —— U.S. ——, 113 S.Ct. 972, 122 L.Ed.2d 127 (1993). This contradiction between the jury's verdict and the court's instructions requires a new trial on both liability and damages. *Cf. id.* at 1021–22 (ordering new trial on damages where jury found liability but no damages despite instruction requiring jury to find injury before finding liability).[5]

■ Mr. Thomas argues that we should order a new trial on damages but not liability because the jury's finding of liability was based on unreviewable credibility determina-

---

4. The court instructed the jury:

> The plaintiff has the burden of proving each of the following propositions to recover on his claim of excessive use of force, considering each defendant separately:
>
> First, that the defendant under consideration used force on the plaintiff; and
>
> Second, that the force used on the plaintiff was excessive ...; and
>
> Third, that the plaintiff suffered damages; and
>
> Fourth, that the excessive force used was a proximate cause of the plaintiff's damages.
>
> If you find from your consideration of all the evidence that the plaintiff has proved each of these propositions, then you[r] verdict should be for the plaintiff and against the defendant under consideration.
>
> On the other hand, if you find from your consideration of all the evidence that the plaintiff has failed to prove any one of these propositions as to the defendant under consideration, then your verdict should be for that defendant and against the plaintiff.
>
> R.Doc. 36, at 15.

5. *Rosario* is not distinguishable on the ground that it involved a claim under the Racketeer

Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962(a) & (c). In both *Rosario* and the instant case, the court specifically instructed the jury to find that the plaintiffs suffered injury before finding liability. *See Rosario*, 963 F.2d at 1020; R.Doc. 36, at 15. Nor is it distinguishable on the ground that the court ordered a new trial solely on damages because the defendants in *Rosario* did not ask for a new trial on liability. *Id.* at 1022. Heath cites several cases that he claims stand for the proposition that a finding of liability coupled with an award of zero damages is permitted. These cases, however, do not help him. *Bogan v. Stroud*, 958 F.2d 180, 182–84 (7th Cir.1992), is not controlling because the court determined that the defendants waived their argument that the jury's award of zero compensation required a finding of no liability. *McKinley v. Trattles*, 732 F.2d 1320, 1325 (7th Cir.1984), is distinguishable because, although the jury found liability but awarded no actual damages, the defendant did not object to this outcome. *Joseph v. Rowlen*, 425 F.2d 1010 (7th Cir.1970), is distinguishable for two reasons. First, unlike the present case, there was no jury instruction that required a finding of injury in order to find liability. Second, neither party objected in *Rowlen* to the jury's finding of liability but no money damages. *Id.* at 1012.

304

tions, whereas the finding of zero damages was based on the jury's failure to accept objective documentary evidence and/or unrebutted testimony. We cannot accept this argument. Aside from the inconsistency inherent in the verdict, the district court also grounded its grant of a new trial on the determination that the verdict was against the weight of the evidence. Crucial to the jury's finding of liability was the testimony of Mr. Thomas that Officer Heath punched him in the mouth. Whether Officer Heath hit Mr. Thomas in this manner was a credibility call that the jury had to make: Mr. Thomas claimed Officer Heath struck the blow; Officer Heath denied striking Mr. Thomas. No one else present testified that such a blow was struck.

The district court heard the same testimony as the jury; it observed the witnesses' demeanor just as the jury did. In deciding whether to order a new trial, it was entitled to weigh the evidence for itself. 11 Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2806, at 44–45 (1973). In weighing the evidence, the court may assess the witnesses' credibility. *See Whalen v. Roanoke County Bd. of Supervisors*, 769 F.2d 221, 226 (4th Cir.1985), *overruled on reh'g on other grounds by* 797 F.2d 170, 171 (4th Cir.1986) (per curiam) (en banc). We cannot say that Heath's denial of striking Mr. Thomas was incredible as a matter of law. The district court did not abuse its discretion in concluding that the jury's finding of liability was against the weight of the evidence.

■ In sum, we hold that the district court did not err by conditionally awarding a new trial. On remand, the district court shall hold a new trial as to both liability and damages.[6]

## Conclusion

Accordingly, we reverse that part of the district court's judgment granting a judgment notwithstanding the verdict. We af-

firm that part of the judgment ordering a new trial. We remand for a new trial on both liability and damages. The parties will bear their own costs in this court.

AFFIRMED in part, REVERSED in part, and REMANDED.

(reversing award to plaintiffs of attorney's fees under 42 U.S.C. § 1988 where Court of Appeals had reversed directed verdict in favor of defendants and ordered a new trial).

---

**6.** Because we order a new trial as to both liability and damages, it would be inappropriate to award costs and attorney's fees for this appeal. *Cf. Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987, 1989, 64 L.Ed.2d 670 (1980)