Nathaniel JONES–BEY, Plaintiff,

v.

Sgt. CONLEY, Sgt. Abraham, Sgt. Pickens, Sgt. Washington, Sgt. Caldwell, Sgt. Riffel, Nurse Henrich, Defendants.

No. CIV. 3:99CV0623AS.

United States District Court,
N.D. Indiana,
South Bend Division.

Nov. 27, 2000.

Nathaniel Jones–Bey, Carlisle, IN, Pro se.

Suzannah B. Wilson, Asst. Indiana Atty. Gen., Indianapolis, IN, for Defendant.

### MEMORANDUM AND ORDER

ALLEN SHARP, District Judge.

The Complaint in this case was filed by pro se plaintiff, Nathaniel Jones Bey, an inmate at the Maximum Control Complex, in Westville, Indiana, claiming a violation pursuant to 42 U.S.C. § 1983. Jones Bey alleges that Defendants, Washington, Riffle, Caldwell, Pickens, and Abraham hereinafter "prison guards", exercised excessive use of force and Defendant, Henrich, exercised deliberate indifference to his serious medical needs in violation of the 8th Amendment.

### I. FACTS

The following facts are undisputed by both Jones Bey and the Defendants. Jones Bey is an Indiana inmate who for all times relevant to this case has been incarcerated at the Maximum Control Facility ("MCF") in Westville, Indiana. On November 12, 1997, the prison guards were

called to Jones Bey's cell by Sergeant Patrick Conley for a cell extraction. The prison guards removed Jones Bey from the cell placing him in trip gear which consisted of leg shackles and handcuffs. At some time after the cell extraction, Jones Bey was examined by Defendant Henrich. The actual adequacy of that examination is disputed by Jones Bey. Beyond these facts, not surprisingly, the versions differ greatly between the respective parties.[1]

### 1. JONES BEY'S VERSION OF FACTS

Jones Bey's version of the facts are as follows. On the morning of November 12, 1997 Officer Cole appeared at Jones Bey's cell and requested that he remove a picture on the back wall and toilet paper covering the window of the cell. (Affidavit of Jones Bey at ¶ 4) Jones Bey contends that he complied with Officer Cole's request by moving the picture to an opposite wall where pictures were allowed. (Id. at ¶¶ 5–6 ) The toilet paper was then moved by Jones Bey to cover only a portion of the cell's window. (Id. at ¶ 7)

Officer Cole returned to the cell and asked why Jones Bey had not complied with his orders. Jones Bey's reply was that he had complied with the directive. (Id. at ¶¶ 9–10)[2] Officer Cole then returned with Sergeant Patrick Conley and asked Jones Bey to cuff up. (Id. at ¶ 12) Jones Bey replied by saying "yes, let me put my shoes on." (Id. at ¶ 13) At all

times Jones Bey was complying with Sergeant Conley's order to cuff up. While, Jones Bey was sitting on his bed and preparing to cuff up Conley opened the cell door. The prison guards were ordered into the cell and proceeded to restrain Jones Bey. (Id. at ¶ 14)

The prison guards attacked and assaulted Jones Bey slamming him to the floor. (Id. at ¶ 17) Jones Bey contends that at no time did he attempt to hit or kick any of the prison guards during this time. (Id.) The prison guards jumped on Jones Bey's back and the weight of four officers were upon him causing excruciating pain. (Id. at ¶ 19) Further, the prison guards repeatedly beat his face into the concrete floor causing bumps, knots and contusions. (Id. at ¶ 23)

The officers then applied handcuffs tightly so as to cut into the flesh and bones of his wrist and hands. (Id. at ¶ 24) The prison guards application of the handcuffs in addition to the weight applied by the prison guards caused permanent indentations in the bones and scars on both of his hands. (Id. at ¶ 25–26) Jones Bey alleges that he has suffered nerve damage as a result of the prison guards actions. (Id. at ¶ 26–29).

After being placed in handcuffs and leg shackles, the prison guards continued to beat him in the back and beat his head against the concrete wall. (Id. at ¶¶ 30–31) The prison guards then took him to the

---

**1.** Additionally, this Court must point out that Jones Bey makes serious allegations in his affidavit to this Court, that Henrich failed to preserve a urine sample that contained blood that was taken on shortly after the incident on November 12, 1997. However, Jones Bey's allegation of destruction of the urine sample did not appear in Jones Bey's complaint and did not surface until Jones Bey filed his response to Defendant's Motion for Summary Judgment. Thus, Defendants have not had an opportunity to respond to these allegations.

In any case, this court finds that even if Jones Bey could show that Henrich either lost or destroyed the sample, Jones Bey fails to show any connection between the lost sample and inadequate medical treatment by the MCF medical staff or Henrich.

**2.** Jones Bey contends that Standard Operating Procedure of the facility states that prisoners could cover half of the cell window. (Id at ¶ 9)

shower area and proceeded to turn on the shower and drench Jones Bey while remaining clothed. (Id. at ¶ 32) At no time did Jones Bey ever struggle or retaliate against these continuing attacks. (Id. at ¶ 33)

Jones Bey demanded medical attention as a result of the altercation with the prison guards. (Id. at ¶ 34) Jones Bey contends that prison guards attempted to return him to his cell. (Id. at ¶¶ 34–35) At this point Jones Bey refused to sit on the bed and resisted the prison guards attempts to sit him on the bed. (Id. at ¶ 35) Jones Bey allegedly refused to sit on the bed until his demand for medical treatment and documentation of his injuries was met. (Id. at ¶ 35)

At this point, Defendant Riffel committed several attacks and assaults upon Jones Bey including; kneeing him in the stomach, groin and pulling him around the neck. (Id. at ¶ 37) As a result of the alleged Assault by Riffel, Jones Bey has suffered ruptured hernia, blood in his urine and other damage to the intestinal area. (Id. at ¶ 38)

Next, Jones Bey contends that he was moved to another part of the facility and remained there with handcuffs, "trip gear" waist chain, leg shackles and a black box. (Id. at ¶ 39) The restraints were placed on him so tight as to result in damage to his hands, wrists, and feet. (Id. at ¶¶ 40–41)

Next, Jones Bey contends that Defendant, nurse Henrich, failed to give him a proper examination. (Id. at ¶ 42) Jones Bey admits that Henrich took his vital signs, blood pressure, and pulse rate. He contends that she refused to examine him even after stating that he received injuries to his chest, neck, back and groin. (Id. at ¶ 42) Jones Bey asked Henrich to make the prison guards loosen the handcuffs, but after examining the handcuffs she refused to request the officers to do so. (Id. at ¶ 43) Additionally, Henrich failed to

clean the blood around his wrists and ankles. (Id. at ¶ 63) Henrich decided to leave after Jones Bey became angry and used profanity because neither Henrich nor the prison guards would loosen the handcuffs. (Id. at ¶ 46) Jones Bey contends that Henrich's actions were deliberately indifferent to his health and safety. (Id. at ¶ 62)

Next, Jones Bey was forced to remain on a cold concrete floor in handcuffs and shackles for several hours causing further injury to his back, spine, hip and hands. (Id. at ¶¶ 48–49). Jones Bey's hands and legs were covered in blood because of cuts resulting from the handcuffs and leg shackles. (Id. at ¶ 49) At this point, Jones Bey began to yell and scream for help, which resulted in Defendants, Washington, Riffel and others loosening the restraining devices. Jones Bey contends that he was forced to endure pain and torture as a result of the ordeal for some four to five hours. (Id. at ¶ 54)

After returning to his cell, Jones Bey began to notice blood in his urine. (Id. at ¶ 54). Jones Bey notified the prison medical staff of the condition of his urine. (Id. at ¶ 54) Jones Bey alleges that, Henrich took the urine sample and then either destroyed it or lost it, so that it would not be made a part of his medical record. (Id. at ¶ 55)

Finally, as a result of the events on November 12, 1997, Jones Bey alleges that he is still suffering from damage to his nerves and bones in his hands, wrists and ankles. (Id. at ¶ 60). Additionally, Jones Bey contends that he suffers from a hernia as a result of the cell extraction. (Id. at ¶ 62) Jones Bey contends that at no time did he warrant such excessive use of force and that the officers actions were done in a malicious and sadistic manner. (Id. at ¶ 65)

## 2. DEFENDANTS VERSION OF FACTS

The Defendants version of the facts differ dramatically from those given by Jones Bey. The Defendants contend that Jones Bey was first asked to remove the toilet paper and a picture on the wall by Officer Cole. (Cole Declaration at ¶ 3). Cole returned to the cell to pick up Jones Bey's food tray and found that Jones Bey had not complied with request to remove the items. (Id. at ¶ 4) Cole then ordered Jones Bey to remove the items from the back wall. (Id. at ¶ 4). According to Cole, Jones Bey refused to comply and told him to get away from the cell. (Id. at ¶ 4)

Next, Cole informed the supervisor, Conley, of Jones Bey's refusal to comply with the directive. (Id. at ¶ 4) Conley then proceeded to give Jones Bey two direct orders to cuff up and allow Cole to remove the items from the back wall. (Cole Dec. at ¶ 5) The Defendants contend that it was not until after Jones Bey refused to comply with Conley's second order to cuff up that an extraction team was requested. (Id. at ¶ 5) Next, Jones Bey was given a third and final order to cuff up and that if he refused an extraction team would be used to remove him from the cell. (Id. at ¶ 5). After this refusal, Conley then ordered the extraction team to enter Jones Bey's cell. (Id. at ¶ 5)

Upon entering Jones Bey's cell, the Defendants contend that Jones Bey charged toward officer Washington and attempted to punch him. (Declaration of Rodney Washington at ¶ 4) The extraction team forced Jones Bey to the floor in an attempt to restrain and control him. (Declarations of Washington, Caldwell and Pickens at ¶ 4). The Defendants contend that Jones Bey attempted to resist and kick the officers at all times. (Id.)

After restraining Jones Bey in trip gear he was returned to his cell and asked by Conley if he would like medical treatment.

(Id.) At this point, Jones Bey was removed to a cell in the receiving area for a medical examination and Defendant, Henrich, was called to examine Jones Bey. (Declaration of Karen Henrich ¶ 3). Henrich contends that she throughly examined Jones Bey and opined that he was not suffering from any serious medical conditions that required immediate treatment from a physician. (Declaration of Karen Henrich ¶ 4) According to Henrich, Jones was found to have normal breathing and vital signs and had no active bleeding. (Id.) Henrich did find that Jones had small abrasions on his wrist and shoulder, but there were no other signs or symptoms of any other injury or illness. (Id.)

Henrich documented Jones Bey's examination in a medical progress report. Henrich noted that injures sustained by Jones Bey and found no serious or life threatening conditions that demanded immediate attention. (Exhibit B of Defendant's Motion to Dismiss) Henrich contends that Jones Bey became verbally abusive during the examination and that she made arrangements for Nurse Collen Collins to further examine Jones Bey that same afternoon. (Id.) After November 12, 1997, Henrich did not examine Jones Bey regarding the injuries allegedly sustained that day. (Id.)

## II. ANALYSIS

### A. SUMMARY JUDGMENT STANDARD

Summary judgment is proper only when there is "no genuine issue of material fact and the moving party is entitled to judgment as a matter of law." Rule 56, Federal Rules of Civil Procedure. *Chavez v. Cady,* 207 F.3d 901, 902 (7th Cir.2000). This Court must construe the facts in the light most favorable to Jones Bey and draw all reasonable inferences in his favor. *Id.* Furthermore, this Court is required to

accept all of Jones Bey's evidence as true and may not downplay his evidence, or conduct a "paper trail" on the merits of his claim. *Reed v. McBride.* 178 F.3d 849, 852 (7th Cir.1999).

## B. CRUEL AND UNUSUAL PUNISHMENT CLAIM

█ The Eighth Amendment prohibits "cruel and unusual punishment" and applies to the states through the Fourteenth Amendment. When evaluating claims for cruel and unusual punishment, the court makes a two-part inquiry: (1) whether the defendants acted with a sufficiently culpable state of mind (subjective component), and (2) whether, in light of "contemporary standards of decency," the alleged deprivation was sufficiently serious to rise to the level of a constitutional violation (objective component). *Hudson v. McMillian,* 503 U.S. 1, 112 S.Ct. 995, 1000, 117 L.Ed.2d 156 (1992); *Wilson v. Seiter,* 501 U.S. 294, 298, 111 S.Ct. 2321, 2326, 115 L.Ed.2d 271 (1991); *Thomas v. Stalter,* 20 F.3d 298, 301 (7th Cir.1994); *Lunsford v. Bennett,* 17 F.3d 1574, 1579 (7th Cir.1994); *Roberts v. Samardvich,* 909 F.Supp. 594, 603 (N.D.Ind.1995); *Martin v. DeBruyn,* 880 F.Supp. 610, 613 (N.D.Ind.1995).

█ The Cruel and Unusual Punishments Clause of the Eighth Amendment prohibits the "unnecessary and wanton infliction of pain" on prisoners. *DeWalt v. Carter,* 224 F.3d 607, 620 (7th Cir.2000); See *Hudson* 503 U.S. at 5, 112 S.Ct. 995,; *Estelle v. Gamble,* 429 U.S. 97, 102–03, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). What constitutes an "unnecessary and wanton infliction of pain," however, "varies according to the nature of the alleged constitutional violation." *Hudson,* 503 U.S. at 5, 112 S.Ct. 995.

## 1. EXCESSIVE FORCE

█ In excessive force cases, "the core judicial inquiry" is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson,* 503 at 6–7, 112 S.Ct. 995. A court should examine a variety of factors in conducting this inquiry, including: 1) the need for an application of force; 2) the relationship between that need and the force applied; 3) the threat reasonably perceived by the responsible officers; 4) the efforts made to temper the severity of the force employed; and 5) the extent of the injury suffered by the prisoner. See *Id.* at 7, 112 S.Ct. 995. With regard to the last of these factors, while significant injury is not required, a claim ordinarily cannot be predicated upon a de minimis use of physical force. See *Id.* at 9–10, 112 S.Ct. 995. Thus, not every push or shove by a prison guard violates a prisoner's constitutional rights. See *id.* at 9, 503 U.S. 1, 112 S.Ct. 995, 117 L.Ed.2d 156 (citing *Johnson v. Glick,* 481 F.2d 1028, 1033 (2d Cir.1973)).

█ In assessing an 8th Amendment claim the Seventh Circuit appears to place great weight on the factors examining the severity of force (Factor 4) and the relationship between the need of force and the force applied (Factor 2), in deciding whether a prison guard's actions were in good faith See *DeWalt v. Carter,* 224 F.3d at 620 comparing *Lunsford v. Bennett,* 17 F.3d 1574, 1582 (7th Cir.1994) (pouring a bucket of water on prisoner and causing the bucket to hit him in the head characterized as de minimis), with *Thomas v. Stalter,* 20 F.3d 298, 301–02 (7th Cir.1994) (punching a prisoner with a closed fist, while held down by other officers, qualified as more than de minimis).

In *Lunsford,* a prisoner admitted that he refused to be reshackled and received minor injuries to his wrist and shoulder as a result. *Id.* at 1578–1579. The Seventh Circuit noted that the guards did not strike or beat the prisoner and used only

the necessary amount of force to reshackle him. *Id. at* 1582. In *Thomas,* several guards forced the prisoner onto a gurney after physically resisting the guards. The guards then proceeded to immobilize the prisoners arms, legs, and head. *Id.* 301. Although the prisoner was immobilized a guard drew back and struck the prisoner with a closed fist. *Id.* at 302. The Seventh Circuit found that in viewing the evidence in the light most favorable to the prisoner, the guard's punch to the face was not necessary to subdue the prisoner. *Id.* Furthermore, in viewing the evidence in a light most favorable to the prisoner, it can be reasonably interpreted that the guards action was a "good faith effort to maintain or restore discipline," but rather was done "maliciously and sadistically to cause harm." *Id* at 302 citing *Hudson* 503 U.S. at 7, 112 S.Ct. 995.

This Court has also found that summary judgment is inappropriate when use of force falls somewhere between *de minimis* found in *Lunsford* and the excessive use of force found in *Thomas. Roberts* 909 F.Supp. at 605. In *Roberts* the prisoner alleged two separate incidents of excessive use of force by prison guards. In the first instance, the prisoner refused to follow the guards orders and continued to act belligerently. *Id.* at 604. This Court found no violation of the 8th Amendment because the prisoner did not dispute he was belligerent and refused to follow the guards orders and the evidence did not demonstrate the guards acted in a malicious or sadistic way to inflict the cut or otherwise harm the defendant. *Roberts* 909 F.Supp. at 604.

The second incident involved the extraction of Roberts from his cell as a result of the first incident. *Id.* at 605. During this incident, which was recorded on videotape, Roberts was hit on the head causing a one inch laceration. *Id.* at 605. While the videotape showed Roberts yelling at the extraction team, there was no signs of any physical resistance by him. *Id.* This Court found that although there was no direct evidence that the guard who struck Roberts acted in a malicious and sadistic manner, in viewing the evidence in a light most favorable to Roberts a reasonable jury could make such an inference. *Id.*

In this case, Jones Bey contends that when the prison guards entered the cell he did not attempt to physically resist the efforts to restrain him with handcuffs. Still offering no resistance to the assault, Jones Bey claims the guards continued to assault and attack him even after he had been restrained, slamming his head into the concrete floor. Jones Bey further contends that during the time he was restrained with handcuffs and leg shackles he was assaulted and attacked by guard Riffel. Jones Bey claims that Riffel struck him in the stomach and groin and pulled him around his neck. Jones Bey claims that these assaults resulted in cuts to his wrists and ankles, nerve damage in his hands, a possible hernia and other intestinal damage.

Although, the defendants proffer a quite different version of events, this Court must view the evidence in the light most favorable to Jones Bey. *Thomas* 20 F.3d at 302. The facts as set forth by Jones Bey can be reasonably interpreted that the officers actions were not a "good faith effort to maintain or restore discipline," *Hudson* 503 U.S. at 7, 112 S.Ct. 995. Thus, Defendants motion for summary judgment with respect to the use of excessive force is DENIED.

## 2. DEFENDANT ABRAHAM'S PERSONAL INVOLVEMENT

To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right, see *Gentry v. Duckworth,* 65 F.3d 555, 561

(7th Cir.1995), or that the defendants stood idly by when they could have prevented the deprivation of that constitutional right. see *Miller v. Smith,* No. 99–2780, 220 F.3d 491, 495 (7th Cir.2000). "A defendant's direct participation in the deprivation is not required." See, e.g., *Smith v. Rowe,* 761 F.2d 360, 369 (7th Cir.1985); *Crowder v. Lash,* 687 F.2d 996, 1005 (7th Cir.1982). Under this rule, a prison guard who has a realistic opportunity to step forward and prevent a fellow guard from violating a prisoner's rights through the use of excessive force but fails to do so can be found liable. See, e.g., *Yang v. Hardin,* 37 F.3d 282, 285 (7th Cir.1994).

Defendant Abraham contends that he had no personal involvement in the extraction of Jones Bey from his cell. However, Abraham admits that although he did not physically participate he was present at the time of the incident serving as the cell extraction recorder. Abraham's contention that because he did not physically participate in attempting to restrain Jones Bey he could not have been personally involved in the use of excessive force is misplaced. If Jones Bey can demonstrate that the prison guards did in fact use excessive force then Abraham must show that he did not stand idly by when he could have prevented the excessive use of force.

### 3. INADEQUATE MEDICAL CARE

A plaintiff alleging inadequate medical care in violation of the Eighth Amendment must demonstrate that the defendant was deliberately indifferent to the plaintiff's serious medical needs. *Farmer v. Brennan,* 511 U.S. 825, 834 114 S.Ct. 1970, 1977, 128 L.Ed.2d 811 (1994); *Hudson,* 503 U.S. at 8–9, 112 S.Ct. 995; *Wilson,* 501 U.S. at 298, 111 S.Ct. 2321; *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1976). "Deliberate indifference" is "recklessness"

in the criminal sense, *Farmer,* 511 U.S. at 838, 114 S.Ct. 1970, and exists only when a prison official "knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer,* 511 U.S. at 837, 114 S.Ct. 1970; *Williams v. O'Leary,* 55 F.3d 320, 324 (7th Cir.), *petition for cert. denied,* (516 U.S. 993, 116 S.Ct. 527, 133 L.Ed.2d 434 (1995)); *Sellers v. Henman,* 41 F.3d 1100, 1102 (7th Cir.1994); see also *Hughes v. Joliet Correctional Ctr.,* 931 F.2d 425, 428 (7th Cir.1991). Deliberate indifference may be manifested by officials "in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle,* 429 U.S. at 104–05, 97 S.Ct. 285.

In addition, it must be noted that deliberate indifference to medical needs violates the Eighth Amendment only if the medical needs are serious. *Hudson,* 503 U.S. at 9, 112 S.Ct. 995 (citing *Estelle,* 429 U.S. at 103–04, 97 S.Ct. 285); *Brownell v. Figel,* 950 F.2d 1285, 1291 (7th Cir.1991); see also *Hughes,* 931 F.2d at 428. When determining whether a medical need is "serious," the court should consider factors such as the severity of the medical condition, the potential harm that could result from a lack of medical care, and the actual harm caused by the lack of medical care. See *Burns v. Head Jailor of LaSalle County Jail,* 576 F.Supp. 618, 620 (N.D.Ill.1984); see also *Thomas v. Pate,* 493 F.2d 151, 158 (7th Cir.1974), cert. denied, 419 U.S. 813, 95 S.Ct. 288, 42 L.Ed.2d 39 (1974). A medical condition is "serious" if it may be "life threatening or pose[s] a risk of needless pain or lingering disability if not treated at once." *Davis v. Jones,* 936 F.2d 971, 972 (7th Cir.1991).

In satisfying this factor this Court must first determine whether Jones Bey's inju-

ries resulting from the cell extraction were serious. The following cases are instructive as to whether a medical need is serious: *De La Paz v. Peters* 959 F.Supp. 909 (N.D.Ill.1997) (Prisoner suffering from urinary and bowel incontinence was a serious medical conditions.); *Cooper v. Dyke,* 814 F.2d 941 (4th Cir.1987) (failure to treat wounded detainee, deliberate indifference found); *Mullen v. Smith,* 738 F.2d 317 (8th Cir.1984) (ignore serious back pain of prisoner with derision; Eighth amendment violation); *Robinson v. Moreland,* 655 F.2d 887 (8th Cir.1981) ($1,000 for treating broken hand with ice pack); compare *Davis v. Jones,* 936 F.2d 971 (7th Cir.1991) (no constitutional violation if police official does not refer slight injury by detainee to medical personnel); *Anderson–EL v. O'Keefe,* 897 F.Supp. 1093, 1097 (N.D.Ill. 1995) (pretrial detainee's scratch on chest was not sufficiently serious).

█ In viewing the facts in a light most favorable to Jones Bey, the injuries did constitute a serious medical need. Jones Bey's confrontation resulted in a lasting and physical altercation with the members of the cell extraction team. He contends that he was hit and kicked repeatedly by the prison guards, that the guards repeatedly beat his face into the concrete floor, that the guards applied handcuffs and leg shackles to his wrist and ankles with extreme force. During the altercation Jones Bey was left with several bruises and abrasions on his wrist and shoulder. Jones Bey's wrists were bloodied as a result of these abrasions. Further as a result of these acts, Jones Bey contends that he was left with permanent damage to the bones in his hands and that he has suffered permanent nerve damage from the altercation. Thus, the injuries rise to the level of a serious medical condition.

The Court now turns to whether Henrich knew of the serious medical need and then whether Henrich disregarded that need. In *Collignon v. Milwaukee County,* 163 F.3d 982 (7th Cir.1998), the Seventh Circuit found that after establishing an objectively serious medical need, the plaintiff must show "(1) that the professional knew of the serious medical need, and (2) disregarded that need." *Id.* at 989. The trier of fact can conclude that the professional knew of the need from evidence that it was obvious and, further, it can be assumed that "what might not be obvious to a lay person might be obvious to a professional acting within her area of expertise." *Id.*

In *Roberts v. Samardvich* 909 F.Supp. at 605–606, it was undisputed that the prisoner received medical treatment subsequent to receiving the laceration to his head and sustaining a puncture to his right heel. Upon the prisoner's request for medical attention, a nurse examined, cleansed and treated his head laceration and heel puncture, the only symptoms of which he complained. *Id.* A few hours later, she returned, examined him, observed that the head laceration was not bleeding, and gave him a bandage for his heel. *Id.* Two days later, Roberts was again seen and treated by medical staff for both his head and heel wounds. *Id.* This Court found that there was no evidence of any intentional denial or delay to access to medical care or intentional interference with the medical treatment.

Similarly, Henrich examined Jones Bey a few hours after his altercation with the cell extraction team. Henrich specifically detailed the examination and diagnosis performed on Jones Bey in his medical progress report. (See Exhibit B of Defendant's Motion for Summary Judgment).[3]

---

**3.** Henrich notes that his pulse rate is strong, small abrasion on left shoulder and on wrist

both with no active bleeding. Furthermore,

At some point during the examination, Henrich contends that Jones Bey became verbally abusive toward her and the other nursing staff. As a result of Jones Bey's abusiveness toward her arrangements were made for Nurse Colleen Collins to further examine Jones Bey that same afternoon. The medical progress report further notes that Jones Bey was examined on several occasions after the November 12, 1997 altercation for his alleged injuries. Thus, the evidence even viewed in a light most favorable to Jones Bey, does not support a finding that Henrich intentionally denied or delayed access to medical care or intentionally interfered with the treatment of Jones Bey during the examination.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment as to Jones Bey's claim for deliberate indifference to his medical needs is **GRANTED.** Defendants' Motion for Summary Judgment as to the excessive use of force claims are **DENIED.** The clerk shall enter judgment accordingly. **IT IS SO ORDERED.**

---

Henrich notes that both lower and upper extremities are in good alignment and that no

other signs or symptoms of injury were noted at this time.