NONPRECEDENTIAL DISPOSITION

To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit**
**Chicago, Illinois 60604**

Submitted June 27, 2014[*]
Decided June 27, 2014

**Before**

DIANE P. WOOD, *Chief Judge*

JOEL M. FLAUM, *Circuit Judge*

DIANE S. SYKES, *Circuit Judge*

No. 14-1018

| | |
|---|---|
| NATANAEL RIVERA,<br>    *Plaintiff-Appellant,*<br><br>    *v.*<br><br>ROBIN LINDMEIER,<br>    *Defendant-Appellee.* | Appeal from the United States District Court for the Eastern District of Wisconsin.<br><br>No. 13-C-124<br><br>William C. Griesbach,<br>*Chief Judge.* |

**O R D E R**

Natanael Rivera, a Wisconsin inmate, claimed in this lawsuit under 42 U.S.C. § 1983 that Lieutenant Robin Lindmeier, a guard at Green Bay Correctional Institution, violated the Eighth Amendment by ordering him placed in six-point restraints for more than 11 hours. The district court granted summary judgment for Lindmeier. Rivera appeals, and we affirm the judgment.

---

[*]After examining the parties' briefs and the record, we have concluded that oral argument is unnecessary. Thus, the appeal is submitted on the briefs and the record. *See* FED. R. APP. P. 34(a)(2)(C).

At summary judgment Lindmeier submitted a declaration explaining the incident that precipitated the use of restraints. Rivera was in segregation when guards in the "sergeant control bubble" heard him banging on his cell door continuously for 10 to 15 minutes around 9:00 p.m. Lindmeier went to Rivera's cell and saw him pounding his fists on the door and yelling about missing property. She warned that if the banging did not stop he would be placed in controlled segregation, where inmates who engage in disruptive or destructive behavior may be held. *See* WIS. ADMIN. CODE DOC § 303.71. Lindmeier asserted that the banging was problematic because it could incite other inmates to "act out" and risked damaging the door's plexiglass window. Rivera continued banging and screaming, so Lindmeier ordered a team of guards to remove him from his cell while another guard with a video camera recorded the encounter. The video shows Rivera screaming and continuously banging on the plexiglass window. Lindmeier told Rivera several times to place his hands through the cell-door trap so that restraints could be placed on his wrists. Rivera refused, and so Lindmeier ordered the guards to spray a chemical incapacitating agent into Rivera's cell. Once Rivera complied, guards placed handcuffs on his wrists and ankles.

By 9:30 p.m. Rivera was brought by Lieutenant Lindmeier and several other guards into a controlled-segregation room, put on a bed, and placed in RIPP™ restraints, which consist of polypropylene belts that are wrapped around the chest, thighs, wrists, and ankles and secured with velcro closures. When Rivera complained that the belts were too tight, guards readjusted them to leave enough room to place their fingers between the belts and Rivera's body. A nurse checked Rivera's blood pressure and pulse to ensure that the restraints were not interfering with his circulation. All this was captured on the video. Lindmeier's shift ended after Rivera was secured in controlled segregation, and after she had left the prison, only the on-duty security supervisor was authorized to take Rivera back to his regular segregation cell. Rivera was kept in controlled segregation for the next 11 hours, until 8:30 a.m., and a guard checked on him every 15 minutes.

Based on these events Lieutenant Lindmeier argued that the restraints were applied in a good-faith effort to maintain or restore discipline and, thus, not in violation of the Eighth Amendment. Lindmeier added that after her shift ended she had no control over monitoring Rivera for pain or ordering the restraints removed. She also contended that summary judgment should be granted in her favor because Rivera did not file a grievance related to this incident.

Rivera's response opposing summary judgment essentially ignored Lieutenant Lindmeier's narrative and contradicted the video. The district court thus concluded that the undisputed facts did not give rise to an Eighth Amendment violation and granted summary judgment for Lindmeier. Alternatively, the court concluded that Rivera had not exhausted his administrative remedies.

Rivera had twice before this ruling asked the district court to recruit counsel to assist him (once before he responded to the defendant's motion for summary judgment and once after). In his first motion Rivera did not say that he had tried to obtain counsel, nor did he offer a reason why he needed counsel. With his second motion Rivera attached three letters from law firms declining to represent him, and he contended that he was not competent to litigate on his own and lacked access to the law library in segregation. The court denied Rivera's requests, reasoning that he was capable of litigating pro se because this was a run-of-the-mill Eighth Amendment case, and he had available to him a video that captured most of episode giving rise to his lawsuit.

On appeal Rivera primarily challenges the district court's conclusion that a jury could not find from the available evidence that Lieutenant Lindmeier had subjected him to cruel and unusual punishment. In his view the video shows that Lindmeier used sadistic and malicious force while placing him in controlled segregation. He adds that Lindmeier should be held accountable for the pain and suffering he endured during the night because she was the person who ordered the restraints in the first place.

To prevail at summary judgment, Rivera had to show that a reasonable jury could conclude that Lieutenant Lindmeier acted maliciously and sadistically to inflict harm, as opposed to acting in a good faith effort to maintain or restore discipline. *See Whitley v. Albers*, 475 U.S. 312, 320–21 (1986); *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012); *Thomas v. Stalter*, 20 F.3d 298, 301 (7th Cir. 1994). But there is no evidence of the requisite wanton intent on Lindmeier's part. Rivera conceded that he was yelling and banging on his cell before Lindmeier ordered his removal. And the video shows Rivera causing a disturbance and disobeying repeated warnings to stop. Lindmeier therefore acted reasonably to restore order by placing Rivera in restraints and placing him in controlled segregation. Nor did Rivera establish liability on Lindemeier's part for keeping him restrained overnight. Once Rivera was secured in the RIPP™ restraints, Lindmeier's shift was over, and she no longer had control over keeping Rivera restrained. And she is the only defendant. (Rivera had named other guards as defendants, but they were dismissed at screening because he did not allege that they were personally involved in restraining him.)

Rivera also contends that the district court abused its discretion by declining to recruit counsel. But the court properly denied Rivera's first request because he did not show that he had tried to obtain counsel on his own. *Jackson v. Kotter,* 541 F.3d 688, 700 (7th Cir. 2008); *Pruitt v. Mote,* 503 F.3d 647, 654–55 (7th Cir. 2007) (en banc). And the court reasonably concluded that Rivera was capable of litigating on his own given that he was pursuing a straightforward Eighth Amendment case, and he had a video of the underlying incident. *See Olson v. Morgan,* 750 F.3d 708, 711–12 (7th Cir. 2013); *Pruitt,* 503 F.3d at 655.

AFFIRMED.