22-277-cv
*Snyder v. Commissioner of Social Security*

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 13th day of February, two thousand twenty-three.

PRESENT:  DENNIS JACOBS,
 ALISON J. NATHAN,
  *Circuit Judges*,
 HECTOR GONZALEZ,
  *District Judge.*[*]

_____

DAWN SNYDER,

 *Plaintiff-Appellant*,

 v.                                                      22-277-cv

COMMISSIONER OF SOCIAL SECURITY,

 *Defendant-Appellee*.

_____

For Plaintiff-Appellant:  PETER A. GORTON, Lachman & Gorton, Endicott, NY.

For Defendant-Appellee:  FERGUS KAISER, Social Security Administration (Ellen E. Sovern, Regional Chief Counsel – Region II, Social Security

---

[*] Judge Hector Gonzalez, of the United States District Court for the Eastern District of New York, sitting by designation.

Administration; Trini E. Ross, United States Attorney, Western District of New York, *on the brief*)

Appeal from a judgment of the United States District Court for the Western District of New York (Sinatra, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff Dawn Snyder applied for disability insurance benefits under the Social Security Act. Following an evidentiary hearing, an Administrative Law Judge ("ALJ") denied her application. The Appeals Council denied Snyder's request for review, rendering the ALJ's decision the final decision of the Commissioner. 20 C.F.R. § 404.981. The district court affirmed the Commissioner's decision, and this appeal followed. We assume the parties' familiarity with the underlying facts and the proceedings below, to which we refer only as necessary to explain our decision.

**I.    Legal Standard**

When reviewing an appeal from a denial of Social Security benefits, "we focus on the administrative ruling rather than the district court's opinion." *Estrella v. Berryhill*, 925 F.3d 90, 95 (2d Cir. 2019) (internal citation omitted). We conduct a plenary review of the entire administrative record to determine whether the Commissioner's decision is supported by substantial evidence and whether it applied the correct legal standards. *Id.* "Substantial evidence is evidence that a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal citation omitted). While the substantial evidence standard requires we find "more than a mere scintilla" of support for the Commissioner's decision, "it is still a very deferential standard of review" requiring us to uphold the Commissioner's findings unless "a reasonable

factfinder would *have to conclude otherwise*." *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 447–48 (2d Cir. 2012) (internal citations omitted).

Under the Social Security Act ("the Act"), a claimant is disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

The Social Security Administration has established a "five-step sequential evaluation process" to determine whether a claimant is disabled under this statutory definition. 20 C.F.R. § 404.1520(a)(4)(i)–(v). "The claimant bears the burden of proving her case at steps one through four." *Estrella*, 925 F.3d at 94. At steps one and two, the claimant must establish that she is not engaging in substantial gainful activity and that she has a severe impairment. 20 C.F.R. § 404.1520(a)(4)(i)–(ii). At step three, if the claimant can establish that her impairment is commensurate with one of the regulation's listed impairments, she proves that she is disabled. *Id.* § 404.1520(a)(4)(iii). If not, the ALJ proceeds to assess the claimant's residual functioning capacity ("RFC"), defined as "the most [she] can still do despite [her] limitations." *Id.* § 404.1545(a)(1). Based on this RFC assessment, the claimant must establish at step four that she cannot perform her past relevant work. *Id.* § 404.1520(a)(4)(iv). A limited burden then shifts to the Commissioner at step five to show that given the claimant's RFC and other relevant factors, "there is work in the national economy that the claimant can do." *Poupore v. Astrue*, 566 F.3d 303, 305–06 (2d Cir. 2009); 20 C.F.R. § 404.1520(a)(4)(iv). If the Commissioner makes this showing, the ALJ will find that the claimant is not disabled.

## II.     Background

Snyder applied for disability insurance benefits for a closed period from October 12, 2016 to May 31, 2018.   In her application, Snyder reported migraines and various other mental and physical impairments which limited her ability to perform work-related tasks and a range of activities of daily living.

An ALJ held a hearing on December 13, 2018, and then denied Snyder's application. At step one of the five-step analysis, the ALJ found that Snyder engaged in significant work activity after the alleged onset date of her disability, but there was insufficient evidence in the record to determine whether she engaged in substantial gainful activity for more than a brief period. At steps two and three, the ALJ found that Snyder had severe impairments, but they did not meet or equal the severity of the regulation's listed impairments.

The ALJ then calculated Snyder's RFC.   The ALJ found that Snyder's impairments could reasonably be expected to cause the symptoms Snyder alleged, but that Snyder's statements about the symptoms' intensity, persistence, and limiting effects were not entirely consistent with the medical evidence and other record evidence.   The ALJ concluded that Snyder's functional limitations would not prevent her from performing sedentary work, provided that the work did not expose Snyder to certain headache triggers or physical hazards and included certain limitations on mental demands.   Snyder could "perform simple, routine, and repetitive tasks" involving "simple, work-related decisions" in "a work environment free of fast paced production requirements" and with "few, if any, workplace changes."   Certified Administrative Record ("CAR") 23.   Snyder could tolerate "simple, short interactions with supervisors or coworkers" but required "no more

than incidental contact with the public" and work that "predominantly involve[d] working with objects rather than people." CAR 23–24.

At steps four and five, based on this RFC finding, the ALJ determined that Snyder could not perform her past relevant work as a secretary at a school district but she could perform less demanding work that exists in significant numbers in the national economy. Therefore, the ALJ found that Snyder was not disabled within the meaning of the Act.

**III.    Discussion**

On appeal, Snyder contends that the ALJ's RFC finding is not supported by substantial evidence because the ALJ failed to properly assess the severity, frequency, and duration of her psychological conditions and migraines. We disagree. In assessing Snyder's RFC, the ALJ carefully considered the entire record—including all of Snyder's symptoms, the medical evidence, opinion evidence, and other evidence of record—and drew conclusions which a reasonable factfinder would not be forced to reject. Considering the administrative record as a whole, we conclude that substantial evidence supports the ALJ's RFC finding that Snyder was capable of performing limited sedentary work during the closed period.

First, medical records, medical opinions, and other opinion evidence support the finding that Snyder's impairments were not totally disabling. In 2010, examining psychologist Dr. Richard Maxwell evaluated Snyder and determined that her concerns about her cognitive function were "most likely . . . based in her anxiety" and while "she will perform a little less well" when overwhelmed, she did not find her current job stressful so "she should be able to maintain reasonable function in that job." CAR 283. In September 2016, examining psychologist Dr. Christopher Yanusas conducted an updated neurological evaluation of Snyder and found that while

"her working memory and alternating attention skills" had declined since the previous evaluation, the change was not significant enough "to obtain a clinically significant change in ability." CAR 311. In November 2016, the agency's consultative psychologist Dr. K. Lieber-Diaz rated Snyder's limitations in understanding and memory, sustained concentration and persistence, social interaction, and adaption as either "moderately limited" or "not significantly limited" and assessed that Snyder could sustain the "mental demands of un[s]killed work." CAR 89–92. While Snyder's consultative psychologist Dr. Amanda Slowik found that Snyder's impairments caused significant limitations in certain mental functions, her opinion was still generally consistent with the finding that Snyder retained substantial mental capacity. CAR 404–08. Snyder's nurse practitioner (NP) Nancy Erwin further corroborated that Snyder's "response to treatment is complicated by the high level of stress she experiences in her current position in the workplace" and supported, along with Snyder's doctors, "a transfer to [a] less critical (and less stressful) position." CAR 697. And though Snyder alleged daily or near daily headaches or migraines that "never go away" and do not respond to treatment, CAR 538, medical records indicated that at various times during the closed period, the use of medication reduced the frequency of Snyder's headaches and migraines, CAR 466, 876.

Snyder's representations and behavior further support the finding that despite her functional limitations, Snyder was capable of unskilled sedentary work. During the closed period, Snyder was able to perform a range of activities on a regular basis, including dropping off and picking up her children from school (CAR 220), helping her parents with finances (CAR 221), caring for other family members (CAR 843), paying bills (CAR 225), doing laundry (CAR 222), going to the grocery store (CAR 844), and feeding a puppy (CAR 221). She successfully planned

and executed her own wedding, which took place in September 2017. CAR 603. She was generally able to attend appointments without difficulty, including her wedding dress fitting (CAR 601) and numerous medical appointments (CAR 210–15). Snyder also denied ever losing a job due to interpersonal problems (CAR 226) or having significant difficulties getting along with family, friends, or neighbors (CAR 224).

This evidence provides substantial support for the ALJ's conclusion and Snyder fails to point to any evidence that compels a contrary conclusion. Snyder argues that the fact that her headaches and migraines "actually caused absences during the period at issue here greater than the amount ordinary tolerated by employers unequivocally establishes that [she] could not meet the demands of competitive employment." Blue Br. 15. But the ALJ acknowledged that Snyder could not meet the demands of her job at the school district. It concluded only that she could perform less demanding work that would not be limited by or trigger her impairments to the same degree.

Snyder's accusation "that the ALJ 'cherry-picked' evidence regarding her mental health" and migraines is simply a "disagreement . . . with the ALJ's weighing of the evidence," which "the deferential standard of review prevents us from reweighing." *Krull v. Colvin*, 669 F. App'x 31, 32 (2d Cir. 2016). For instance, the ALJ reasonably determined that the opinions of Dr. Slowik and NP Erwin concerning Snyder's significant absences and off-task behavior were speculative and contradicted by other record evidence. The ALJ acted within her discretion in weighing the evidence, and "the ALJ's RFC conclusion need not perfectly match any single medical opinion in the record, so long as it is supported by substantial evidence." *Schillo v. Kijakazi*, 31 F.4th 64, 78 (2d Cir. 2022).

7

Snyder's reliance on *Colgan v. Kijakazi*, 22 F.4th 353 (2d Cir. 2022), is similarly misguided. In *Colgan*, the Court held that the ALJ erred because it misapplied the treating physician rule, *id.* at 360, which is not a claim Snyder makes. Snyder also highlights *Colgan*'s holding that the claimant's "ability to engage in certain activities of daily living—such as caring for her two children, preparing meals and washing dishes, and driving to her medical appointments" was not alone sufficient to "make a treating physician's findings flawed and foreclose an applicant's entitlement to disability benefits." *Id.* at 363. But Snyder's daily activities were not the only basis for the ALJ's findings or evidence used to overcome a treating physician's otherwise controlling opinion, and *Colgan* did not establish a categorical rule prohibiting ALJs generally from considering a claimant's daily activities in an RFC assessment. In *Schillo*, the Court found that the claimant's "testimony about her daily activities—including her ability to do chores around her house, bathe, dress, and use her cellphone—lends some support to the ALJ's findings." 31 F.4th at 78 n.4. Citing *Colgan*, it explained that "[r]egardless of whether this testimony standing alone could have been sufficient to accord lesser weight to the treating physicians' opinions, it bolsters what the ALJ found after a thorough review of the record" concerning the claimant's abilities "during the relevant period." *Id.*

Finally, Snyder argues that the ALJ committed legal error by taking into account that Snyder did not submit a headache log to support the frequency of headaches she alleged, that she did not require recurrent hospitalizations, and that she continued to engage in certain activities that commonly trigger headaches and migraines, including alcohol use. But Snyder points to no authority stating that considering such factors in an RFC assessment constitutes legal error. Indeed, the regulations explicitly state that treatment and methods used to alleviate symptoms, and

how symptoms affect patterns of daily living, are relevant to the ALJ's assessment. 20 C.F.R. §§ 404.1513(a)(3), 404.1529(c)(3)–(4). To be sure, an individual might experience totally disabling headaches without keeping a headache log, abstaining from triggers, or visiting the hospital. But the absence of such behaviors can still be relevant to the ALJ's overall assessment, when combined with other evidence. "The Secretary is entitled to rely not only on what the record says, but also on what it does not say." *Dumas v. Schweiker*, 712 F.2d 1545, 1553 (2d Cir. 1983); *see also Yucekus v. Comm'r of Soc. Sec.*, 829 F. App'x 553, 556 (2d Cir. 2020) (same). After all, it is the claimant's burden to prove a more restrictive RFC, *Estrella*, 925 F.3d at 94, and "[a] lack of supporting evidence on a matter for which the claimant bears the burden of proof, particularly when coupled with other inconsistent record evidence, can constitute substantial evidence supporting a denial of benefits," *Barry v. Colvin*, 606 F. App'x 621, 622 (2d Cir. 2015) (citing *Talavera v. Astrue,* 697 F.3d 145, 153 (2d Cir. 2012)).

We have considered Snyder's remaining arguments and find them to be without merit. For the foregoing reasons, we affirm the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court